1  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   GREGORY W. KNOPP (SBN 237615)
2  SUSAN K. LEADER (SBN 216743)
   GALIT A. KNOTZ (SBN 252962)
3  JONATHAN P. SLOWIK (SBN 287635)
   gknopp@akingump.com
4  sleader@akingump.com
   gknotz@akingump.com
5  jpslowik@akingump.com
   1999 Avenue of the Stars, Suite 600
6  Los Angeles, CA 90067
   Telephone:    310-229-1000
7  Facsimile:    310-229-1001

8  Attorneys for Defendant
   DIRECTV, LLC
9

10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14 | CANH LE,                          | Case No. 2:16-cv-01369-SVW-AS
15 |              Plaintiff,            | **DEFENDANT DIRECTV, LLC'S NOTICE OF MOTION AND MOTION**
16 |      v.                            | **FOR SUMMARY ADJUDICATION REGARDING FLSA CLAIMS AND**
17 | DIRECTV, LLC,                      | **DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES IN**
18 |              Defendant.            | **SUPPORT THEREOF**

19              Date:     September 11, 2017
                Time:     1:30 p.m.
20              Dept.:    10A
                Judge:    Stephen V. Wilson
21
                [Separate Statement, Compendium of
22              Evidence, [Proposed] Order and Notice of
                Lodging USB Drive filed concurrently]
23
                Date Action Filed:    February 26, 2016
24              Pretrial Conference: November 6, 2017
                Trial Date:           November 7, 2017
25

26

27

28

---

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 11, 2017 at 1:30 p.m., or as soon thereafter as may be heard in Courtroom 10A of the United States Courthouse, located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, California 90012, Defendant DirecTV, LLC, ("DirecTV") will and hereby does move for summary adjudication as to plaintiffs Paul Guzik, Jeffery Kidd, Jeremy Lasater, Canh Le, Mendamar Lkhagvadorj, Jamie Nault, Armando Solis Juarez, Henry Trujeque, and David Varas (collectively, "Plaintiffs") on the following grounds:[1]

1.     Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") fail as a matter of law for the following reasons:

    a.     With the exception of Trujeque, Plaintiffs' claims for failure to pay overtime wages under the FLSA fail as a matter of law because Plaintiffs are exempt from the overtime provisions of the FLSA under 29 U.S.C. § 207(i).

    b.     Plaintiffs' claims for failure to pay minimum wages under the FLSA fail as a matter of law because Plaintiffs were paid more than the minimum wage.

    c.     Plaintiffs' claims for "gap time" under the FLSA—i.e., unpaid time within the first 40 hours in a week—fail as a matter of law because the FLSA does not provide for "gap time" wages.

    d.     Plaintiffs' claims under the FLSA fail as a matter of law because Plaintiffs cannot prove that DirecTV knew or should have known that they worked hours for which they were not adequately compensated.

2.     Plaintiffs' claims are barred in part by the applicable statutes of limitations,

---

[1] DirecTV is filing an identical motion in each of the nine related cases: *Canh Le v. DIRECTV, LLC*, Case No. 2:16-cv-01369-SVW-AS, *Jeremy Lasater v. DIRECTV, LLC*, Case No. 2:16-cv-01373-SVW-AS, *David Varas v. DIRECTV, LLC*, Case No. 2:16-cv-01395-SVW-AS, *Mendamar Lkhagvadorj v. DIRECTV, LLC*, Case No. 2:16-cv-01502-SVW-AS, *Henry Trujeque v. DIRECTV, LLC*, Case No. 2:16-cv-01477-SVW-AS, *Paul Guzik v. DIRECTV, LLC*, Case No. 2:16-cv-01967-SVW-AS, *Jeffrey Kidd v. DIRECTV, LLC*, Case No. 2:16-cv-01506-SVW-AS, *Armando Solis Juarez v. DIRECTV, LLC*, Case No. 5:16-cv-00400-SVW-AS, *Jamie Nault v. DIRECTV, LLC*, Case No. 2:16-cv-05721-SVW-AS. All of the related pleadings and evidence are also identical except for the proposed orders.

1   as follows:

2       a.    A two-year statute of limitations applies to Plaintiffs' FLSA

3   claims—not the longer three-year statute of limitations for "willful" violations—

4   because Plaintiffs cannot prove that DirecTV willfully violated the FLSA.

5       b.    The statutes of limitations applicable to Plaintiffs' claims ran for the

6   period beginning January 4, 2016 (when the Court dismissed Plaintiffs' prior

7   lawsuits) and ending on the date that each Plaintiff filed his individual lawsuit.

8       3.    DirecTV is entitled to summary adjudication of the following damages

9   issues:

10       a.    The "regular rate of pay" applicable to Plaintiffs' claims for unpaid

11   overtime wages under the FLSA and California law must be calculated by

12   dividing Plaintiffs' total compensation in a workweek by the total number of

13   hours worked in that workweek.

14       b.    Any unpaid overtime wages under Plaintiffs' FLSA and California

15   law claims should be calculated by multiplying one-half of the Plaintiffs' regular

16   rate of pay by the number of overtime hours.

17       This Motion is based upon this Notice of Motion, the attached Memorandum of

18   Points and Authorities, the Declaration of Jonathan Slowik, the Compendium of

19   Evidence, any matter upon which the Court may take judicial notice, all pleadings and

20   papers in the Court's file, and upon such argument as may be made at the hearing on this

21   Motion.  This Motion is made following the telephone conference of counsel pursuant

22   to Local Rule 7-3, which took place on June 23, 2017.

23   Dated:  July 7, 2017                AKIN GUMP STRAUSS HAUER &
24                                     FELD LLP

25                   BY  */s/ Gregory W. Knopp*
26                                 Gregory W. Knopp
                       Attorneys for Defendant DIRECTV LLC

27

28

DEFENDANT DIRECTV, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     BACKGROUND ................................................................................................ 2

III.    ARGUMENT ..................................................................................................... 3

    A.    Plaintiffs' FLSA Claims Fail. ................................................................. 3

        1.    The FLSA Overtime Claims Fail ................................................. 3

            a)    Plaintiffs Worked In A Retail Or Service Establishment .................................................................. 4

            b)    Plaintiffs Were Paid Commissions On Goods And Services ........................................................................ 6

            c)    Plaintiffs Earned More Than 1.5 Times The Minimum Wage. ........................................................ 8

        2.    Plaintiffs' Minimum Wage Or "Gap Time" Claims Also Fail ............................................................................................. 10

        3.    The FLSA Claims Also Fail For Lack Of The Required Knowledge. ................................................................................ 11

    B.    The Court Should Determine The Time Periods At Issue ..................... 14

        1.    A Two-Year Limitations Period Governs Plaintiffs' FLSA Claims. ........................................................................................ 14

        2.    The Statute Of Limitations Resumed Running In 2016. ............ 18

    C.    The Court Should Determine The Proper Measure Of Overtime Pay. ...................................................................................................... 20

        1.    The Regular Rate Equals Total Pay Divided By Total Hours. ....................................................................................... 20

        2.    Overtime Damages Equal One-Half Times The Regular Rate. ............................................................................................ 24

IV.     CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbe v. City of San Diego*,
  2007 WL 4146696 (S.D. Cal. Nov. 9, 2007) ............................................................. 11

*Adair v. City of Kirkland*,
  185 F.3d 1055 (9th Cir. 1999) ............................................................. 10

*Adami v. Cardo Windows, Inc.*,
  2015 WL 1471844 (D.N.J. Mar. 31, 2015) ............................................................. 22

*Adedapoidle-Tyehimba v. Crunch, LLC*,
  2013 WL 4082137 (N.D. Cal. Aug. 9, 2013) ............................................................. 19

*Alston v. DirecTV, Inc.*,
  2017 WL 2311588 (D.S.C. May 16, 2017) ............................................................. 6

*Alvarado v. Corp. Cleaning Servs., Inc.*,
  782 F.3d 365 (7th Cir. 2015) ............................................................. *passim*

*Arnold v. DirecTV, LLC*,
  2017 WL 1196428 (E.D. Mo. Mar. 31, 2017) ............................................................. *passim*

*Balasanyan v. Nordstrom, Inc.*,
  913 F. Supp. 2d 1001 (S.D. Cal. 2012) ............................................................. 10

*Barnhart v. Thomas*,
  540 U.S. 20 (2003) ............................................................. 22

*Bennett v. Unitek Global Servs., LLC*,
  2013 WL 4804841 (N.D. Ill. Sept. 9, 2013) ............................................................. 15

*Bonilla v. Las Vegas Cigar Co.*,
  61 F. Supp. 2d 1129 (D. Nev. 1999) ............................................................. 19

*Brunozzi v. Cable Commc'ns, Inc.*,
  851 F.3d 990 (9th Cir. 2017) ............................................................. 22, 24

*Callahan v. City of Sanger*,
  2015 WL 2455419 (E.D. Cal. May 22, 2015) ............................................................. 16

*Cancilla v. Ecolab, Inc.*,
   2013 WL 1365939 (N.D. Cal. Apr. 3, 2013) ..................................................... 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................ 3

*Chao v. A-One Medical Servs., Inc.*,
   346 F.3d 908 (9th Cir. 2003) .............................................................................. 17

*Chao v. Mid-Atlantic Installation Servs, Inc.*,
   16 F. App'x 104 (4th Cir. 2001) ....................................................................... 15

*Charlot v. Ecolab, Inc.*,
   136 F. Supp. 3d 433 (E.D.N.Y. 2015) ................................................................ 9

*Cox v. Brookshire Grocery Co.*,
   919 F.2d 354 (5th Cir. 1990) .............................................................................. 14

*Crawford v. Saks & Co.*,
   2016 WL 3090781 (S.D. Tex. June 2, 2016) ..................................................... 8

*Dikker v. 5-Star Team Leasing, LLC*,
   2017 WL 1030502 (W.D. Mich. Mar. 17, 2017) ............................................ 11

*Dufrene v. Browning-Ferris, Inc.*,
   207 F.3d 264 (5th Cir. 2000) .............................................................................. 21

*Farris v. Cnty. of Riverside*,
   667 F. Supp. 2d 1151 (C.D. Cal. 2009) ........................................................... 11

*Feaver v. Kaiser Found. Health Plan, Inc.*,
   2016 WL 324176 (N.D. Cal. Jan. 27, 2016) .................................................... 11

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
   646 F.2d 413 (9th Cir. 1981) .............................................................................. 11

*Frank v. McQuigg*,
   950 F.2d 590 (9th Cir. 1991) .............................................................................. 20

*Freund v. Hi-Tech Satellite, Inc.*,
   185 F. App'x 782 (11th Cir. 2006) ................................................................... 15

*Fugate v. Dolgencorp, LLC*,
   2012 WL 5268494 (N.D. Ind. Oct. 23, 2012) ................................................ 17

*Gatto v. Mortgage Specialists of Ill., Inc.*,
    442 F. Supp. 2d 529 (N.D. Ill. 2006).........................................................10

*Gieg v. DDR, Inc.*,
    407 F.3d 1038 (9th Cir. 2006) ..............................................................4, 5

*Gomez v. H & R Gunlund Ranches, Inc.*,
    2010 WL 5232973 (E.D. Cal. Dec. 16, 2010) ..........................................21

*Gremillion v. Cox Comm's Louisiana*,
    2017 WL 1321318 (E.D. La. Apr. 3, 2017).......................................15, 17

*Hartsell v. Dr. Pepper Bottling Co. of Texas*,
    207 F.3d 269 (5th Cir. 2000) ...................................................................24

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604 (1993)..................................................................................14

*Herman v. Mid-Atlantic Installation Servs., Inc.*,
    164 F. Supp. 2d 667 (D. Md. 2000)..........................................................15

*Hertz v. Woodbury County Iowa*,
    566 F.3d 775 (8th Cir. 2009) .............................................................11, 12

*Horn v. Digital Cable & Comm., Inc.*,
    2008 WL 7140826 (N.D. Ohio Nov. 18, 2008)..........................................7

*Jacobson v. Comcast Corp.*,
    740 F. Supp. 2d 683 (D. Md. 2010)..........................................................15

*Jean-Louis v. Metropolitan Cable Comms., Inc.*,
    838 F. Supp. 2d 111 (S.D.N.Y. 2011) ......................................................15

*Johnson v. Wave Comm GR LLC*,
    4 F. Supp. 3d 423 (N.D.N.Y. 2014)....................................................4, 5, 7

*Jones v. Tucker Commc'ns, Inc.*,
    2013 WL 6072966 (M.D. Ga. Nov. 18, 2013)  ...............................4, 5, 6, 8

*La Parne v. Monex Deposit Co.*,
    714 F. Supp. 2d 1035 (C.D. Cal. 2010) ..................................................5, 6

*Lawrence v. Adderley Indus., Inc.*,
    2011 WL 666304 (E.D.N.Y. Feb. 11, 2011) ............................................15

*Lindberg v. Kazak-Mars, Inc.*,
   2014 WL 12617377 (C.D. Cal. Aug. 8, 2014) ........................................................3

*Lundy v. Catholic Health Syst. of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013) ........................................................11

*Maciel v. City of Los Angeles*,
   569 F. Supp. 2d 1038 (C.D. Cal. 2008) ........................................................10, 11

*Matrai v. DirecTV, LLC*,
   168 F. Supp. 3d 1347, 1357-65 (D. Kan. 2016) ........................................*passim*

*McCune v. Oregon Sr. Servs. Div.*,
   894 F.2d 1107 (9th Cir. 1990) ........................................................11

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988) ........................................................14, 16

*Mechmet v. Four Seasons Hotels, Ltd.*,
   825 F.2d 1173 (7th Cir. 1987) ........................................................7

*Moore v. Adv. Cable Contractors, Inc.*,
   2013 WL 3991966 (N.D. Ga. Aug. 1, 2013) ........................................................4

*Moore v. IMCO Recycling of CA, Inc.*,
   2005 WL 5887179 (C.D. Cal. June 29, 2005) ........................................................9

*Moreau v. Air France*,
   356 F.3d 942 (9th Cir. 2004) ........................................................16

*Newton v. City of Henderson*,
   47 F.3d 746 (5th Cir. 1995) ........................................................11

*Ontiveros v. Safelite Fulfillment, Inc.*,
   2017 WL 679167 (C.D. Cal. Feb. 7, 2017) ........................................................20

*Owopetu v. Nationwide CA TV Auditing Servs., Inc.* (*Owopetu I*),
   2011 WL 883703 (D. Vt. Mar. 11, 2011) ........................................................7, 8

*Owopetu v. Nationwide CATV Auditing Servs., Inc.* (*Owopetu II*),
   2011 WL 4433159 (D. Vt. Sept. 21, 2011) ........................................................4, 5, 8

*Parker v. NutriSystem, Inc.*,
   620 F.3d 274 (3d Cir. 2010) ........................................................6, 7

*Perez v. Lantern Light Corp.*,
  2015 WL 3451268 (W.D. Wash. May 29, 2015) ........................................ 17

*Powell v. Carey Int'l, Inc.*,
  514 F. Supp. 2d 1302 (S.D. Fla. 2007) .............................................. 21, 24

*Prachasaisoradej v. Ralphs Grocery Co., Inc.*,
  42 Cal. 4th 217 (2007) ................................................................. 23

*Reich v. Gateway Press, Inc.*,
  13 F.3d 685 (3d Cir. 1994) ............................................................ 16

*Reich v. Japan Enterprises Corp.*,
  91 F.3d 154, 1996 WL 387667 (9th Cir. 1996) ......................................... 16

*Roeder v. DirecTV, Inc.*,
  2017 WL 151401 (N.D. Iowa Jan. 13, 2017) ......................................... 5, 8

*Roslov v. DirecTV Inc.*,
  218 F. Supp. 3d 965 (E.D. Ark. 2016) ................................................. 16

*Sandoval v. M1 Auto Collisions Centers*,
  2016 WL 6561580 (N.D. Cal. Sept. 23, 2016) ......................................... 23

*Santelices v. Cable Wiring*,
  147 F. Supp. 2d 1313 (S.D. Fla. 2001) ................................................. 15

*Schwind v. EW & Assocs., Inc.*,
  371 F. Supp. 2d 560 (S.D.N.Y. 2005) .................................................... 9

*Scruggs v. Skylink, Ltd.*,
  2011 WL 6026152 (S.D. W. Va. Dec. 2, 2011) ........................................ 15

*Serrano v. Republic Servs., Inc.*,
  __ F. Supp. 3d __, 2017 WL 24306 (S.D. Tex. Jan. 3, 2017) .................... 22

*Serv. Employees Int'l Union, Local 102 v. Cnty. of San Diego*,
  60 F.3d 1346 (9th Cir. 1994) ................................................. 14, 16, 17

*Stoll v. Runyon*,
  165 F.3d 1238 (9th Cir. 1999) ......................................................... 19

*Thompson v. Capstone Logistics, L.L.C.*,
  2016 WL 4570817 (S.D. Tex. Aug. 31, 2016) ......................................... 24

*Thornton v. Charter Comm's, LLC,*
  2014 WL 4794320 (E.D. Mo. Sept. 25, 2014) ........................................................... 15

*Valdez v. Cox Comm. Las Vegas,*
  2012 WL 1203726 (D. Nev. Apr. 11, 2012) ................................................................ 15

*Walling v. Youngerman-Reynolds Hardwood Co.,*
  325 U.S. 419 (1945) .................................................................................................. 22

*Walton v. Un. Consumers Club,*
  786 F.2d 303 (7th Cir. 1986) .................................................................................... 10

*Yi v. Sterling Collision Centers, Inc.,*
  480 F.3d 505 (7th Cir. 2007) ...................................................................................... 6

*Zampos v. W & E Comms., Inc.,*
  970 F. Supp. 2d 794 (N.D. Ill. 2013) ........................................................................ 15

**Statutes**

29 C.F.R.
  § 776.120 .................................................................................................................... 9
  § 778.109 .................................................................................................................. 20
  § 778.111 ............................................................................................................. 21, 22
  § 778.111(a) ............................................................................................................. 24
  § 778.112 ........................................................................................................ 21, 22, 24
  § 778.318 .................................................................................................................. 22
  § 778.318(a) ............................................................................................................. 23
  § 779.113 .................................................................................................................. 21
  § 779.419 .................................................................................................................... 8

29 U.S.C.
  § 207(a)(1) ......................................................................................................... 20, 24
  § 207(i) ................................................................................................................. 4, 10
  § 213(a)(2) ................................................................................................................. 4
  § 255(a) .................................................................................................................... 14

Cal. Lab. Code § 510(a) ............................................................................................... 20

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................... 3

DEFENDANT DIRECTV, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

**Other Authorities**

DLSE Op. Ltr. 1990.07.23,
    (https://www.dir.ca.gov/dlse/opinions/1990-07-23.pdf) ............................................. 23

DLSE Op. Ltr. 1993.02.22-1,
    (https://www.dir.ca.gov/dlse/opinions/1993-02-22-1.pdf) ........................................ 23

2002 DLSE Enforcement Policies & Interpretations Manual, § 49.2.1.2,
    (https://www.dir.ca.gov/dlse /DLSEManual/dlse_enfcmanual.pdf) ................... 23, 24

# I.     INTRODUCTION

Plaintiffs are independent contractor technicians engaged by various companies that contracted with DirecTV to install DirecTV satellite television equipment. Plaintiffs sued DirecTV—but not the installation companies that engaged them—claiming that DirecTV actually employed them and violated the Fair Labor Standards Act ("FLSA") and various California employment laws.  All of the claims fail for various reasons, including because DirecTV did not employ Plaintiffs, as explained in the company's separate cross-motion for summary judgment.

But even if an employment relationship existed, Plaintiffs' FLSA claims still fail as a matter of law.  Plaintiffs cannot prove that DirecTV failed to pay them for overtime because they fall within the statute's exemption for certain commission-based workers. Nor can they prove a claim for non-overtime pay because they earned more than the minimum wage, and the FLSA does not permit claims for any other non-overtime pay ("gap time").  The FLSA claims also fail because Plaintiffs cannot prove, as they must, that DirecTV knew or should have known about allegedly unpaid work.

Moreover, even if the FLSA claims can survive summary judgment, the time period at issue is substantially shorter than Plaintiffs claim.  It is beyond question that DirecTV did not "willfully" violate the FLSA, so the statute's two-year limitations period applies.  The relevant period should be further reduced because the statute of limitations resumed running for several months after the Court dismissed Plaintiffs' prior actions and Plaintiffs inexplicably delayed in filing the instant lawsuits.

Finally, the Court should determine the proper measure of potential overtime damages under both the FLSA and California law.  For workers like Plaintiffs, who earned a fixed amount per job rather than hourly pay, overtime pay equals one-half times the regular rate, which is determined by dividing the weekly pay by all hours worked.  Plaintiffs' proposed methodology—*1.5 times* the regular rate determined by dividing the pay by only *some* of the hours—contravenes clear authority and would create the potential for an impermissible windfall.

## II.   **<u>BACKGROUND</u>**

DirecTV offers satellite services to customers.  *See* Statement of Undisputed Facts ("UF") 1.  When a customer requests satellite service, an installation technician must visit the customer's home to install the satellite and any other necessary equipment and to activate the service.  UF 2.

DirecTV's business involves large fluctuations in consumer demand and therefore large fluctuations in the number of installations that must be completed.  UF 3.  Some of this fluctuation is cyclical and predictable—for example, demand increases before football season—but other events such as channel disputes, weather issues, and outages by competitors are unpredictable and therefore lead to unforeseen changes in workflow. UF 4.  To deal with these fluctuations, DirecTV has contracted with outside installation companies to handle a portion of the installations ("Contracting Companies").  UF 5.

To fulfil the work orders, the Contracting Companies engage satellite installation technicians, such as Plaintiffs.  UF 6.[2]  Plaintiffs are engaged by the Contracting Companies as independent contractors.  UF 7.  DirecTV plays no role in the hiring of these technicians and leaves it to the Contracting Companies to maintain a workforce of trained technicians who can perform satellite installations.  UF 8.  Thus, DirecTV does not have any written contracts with Plaintiffs.  UF 9.

Because Plaintiffs are engaged as independent contractors by the Contracting Companies, DirecTV does not maintain Plaintiffs' employment records, has no direct involvement in their scheduling, and does not monitor the hours that they work.  UFs 10-14, 32.  DirecTV uses a system called SIEBEL to schedule work orders for customers.  UF 11.  When a sale of a DirecTV system occurs, a work order is created in SIEBEL.  *Id*.  DirecTV assigns work orders to Contracting Companies in bulk and leaves it to the Contracting Companies to allocate those jobs to technicians.  UFs 12-13.

---

[2] The nine Plaintiffs were engaged by various Contracting Companies, and some Plaintiffs contracted with multiple Contracting Companies during the relevant periods. For reference, the dates during which each Plaintiff claims to have been contracted with each Contracting Company are attached as Appendix A.

The Contracting Companies routinely reassign work orders to different technicians based on technician skill set, location, and preferences; to ensure efficiency in scheduling; and to address technician absences.  UF 14.

DirecTV does not pay Plaintiffs or determine or track their compensation.  UFs 15-18.  Rather, Plaintiffs are paid by the Contracting Companies.  UF 15.  The Contracting Companies pay Plaintiffs for each job they complete, based on the size and nature of the installation and regardless of how long it takes.  UF 19 (*e.g.*, one company paid Lasater $65 to $70 for the first receiver installed in a home and $18 to $20 for additional receivers).  The rates are set without DirecTV's involvement.  UF 17-18.  Because of how they are paid (by the installation), Plaintiffs can make more money by taking on additional jobs and working more quickly.  UF 20 (Varas: Q: "So finishing a job quickly allows you to move on, make more money by taking on more jobs; is that correct?"  A: "Yes, sir."); (Kidd wanted "as many work orders as [he] could handle in a day" because "in order to make more money, you had to do more work").

## III.   ARGUMENT

Summary judgment is required when the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Further, the Court may summarily adjudicate non-dispositive issues, such as those concerning potential damages, where, as here, doing so "would narrow the focus of the case going forward and expedite its resolution."  *Lindberg v. Kazak-Mars, Inc.*, 2014 WL 12617377, at *1 (C.D. Cal. Aug. 8, 2014).

### A.   Plaintiffs' FLSA Claims Fail.

#### 1.   The FLSA Overtime Claims Fail

The FLSA overtime provisions exempt certain commissioned workers at retail establishments.  Specifically, the exemption applies if the worker is employed by "a retail or service establishment"; "more than half his compensation for a representative period . . . represents commissions on goods or services"; and his rate of pay exceeds

1    1.5 times the minimum wage.  29 U.S.C. § 207(i); *Alvarado v. Corp. Cleaning Servs.,*
2    *Inc.*, 782 F.3d 365, 366 (7th Cir. 2015).  These requirements are satisfied here, so
3    Plaintiffs' overtime claims must be rejected.  *See Gieg v. DDR, Inc.*, 407 F.3d 1038,
4    1045 (9th Cir. 2006) (application of exemption was question of law).
5         Notably, in nearly identical cases, two federal courts recently held that technicians
6    installing DirecTV satellite satisfy the exemption.  *Matrai v. DirecTV, LLC*, 168 F. Supp.
7    3d 1347, 1357-65 (D. Kan. 2016); *Carpenter v. DirecTV, LLC*, No. 14-cv-02854, Dkt.
8    No. 146 (D. Colo. May 16, 2017).  Multiple other courts also have held that the
9    exemption forecloses FLSA overtime claims by cable and telecommunications
10   technicians like Plaintiffs.  *E.g.*, *Jones v. Tucker Commc'ns, Inc.*, 2013 WL 6072966, at
11   *11 (M.D. Ga. Nov. 18, 2013); *Owopetu v. Nationwide CATV Auditing Servs., Inc.*
12   (*Owopetu II*), 2011 WL 4433159, at *7 (D. Vt. Sept. 21, 2011); *Johnson v. Wave Comm*
13   *GR LLC*, 4 F. Supp. 3d 423, 446 (N.D.N.Y. 2014); *Moore v. Adv. Cable Contractors,*
14   *Inc.*, 2013 WL 3991966, at *5 (N.D. Ga. Aug. 1, 2013).  These cases are directly on
15   point and should bar Plaintiffs' FLSA overtime claims.
16         a)    Plaintiffs Worked In A Retail Or Service Establishment.
17         Though the FLSA currently does not define "retail or service establishment,"
18   courts in this Circuit and elsewhere typically consider two factors in applying this
19   element.  First, they consider the language of the now-repealed section 213(a)(2), which
20   stated that retail or service establishment is "an establishment 75 per centum of whose
21   annual dollar volume of sales of goods or services (or of both) is not for resale and is
22   recognized as retail sales or services in the particular industry."  *See Gieg*, 407 F.3d at
23   1047 ("Although § 213(a)(2) was later repealed, courts have continued to apply its
24   definition of "retail or service establishment" to Section 207(i)").  Second, courts
25   consider the employer's sensitivity to consumer demand; a wholesaler or manufacturer
26   can produce and sell products regardless of consumer demand, while a retail or service
27   provider is unable to make a sale without a willing retail customer.  *Matrai*, 168 F. Supp.
28   3d at 1360.  These factors plainly support the exemption's application here.

Under the first test, DirecTV is an establishment 75 per centum of whose annual dollar volume of sales of goods or services is not for resale. Courts have consistently held that DirecTV (as well as other cable and satellite installation and repair companies) provide services that are not for resale and thus are retail or service establishments. *E.g.*, *Matrai*, 168 F. Supp. 3d at 1360 (finding DirecTV to be a retail or service establishment); *Carpenter*, D. Colo. No. 14-cv-02854, Dkt. No. 146, at 14 (same); *Jones*, 2013 WL 6072966, at *6 (finding cable installation company to be a retail or service establishment); *Owopetu II*, 2011 WL 4433159, at *7 (same). Indeed, *all* of DirecTV's revenue comes from sales of goods or services that are not for resale. UF 21. DirecTV installs satellite equipment in homes and businesses for the customer's private use. UF 22. DirecTV does not intend that the customer resell the services and does not believe that any customer does so. UF 23; *see Gieg*, 407 F.3d at 1048-49 (auto lease providers were retail establishments because "[n]either the dealer nor the customer enters into a lease with the expectation that the vehicle or its parts will be promptly resold"); *La Parne v. Monex Deposit Co.*, 714 F. Supp. 2d 1035, 1040 (C.D. Cal. 2010) (defendant was a retail establishment when its employees had no "reasonable cause to believe the goods are purchased for immediate resale"); *Alvarado*, 782 F.3d at 367.

Further, DirecTV's sales are recognized as retail sales or services in the industry. In prior cases against DirecTV and similar companies, satellite installation professionals have testified that companies like DirecTV are considered to be retailers. *Jones*, 2013 WL 6072966, at *9 (citing affidavits from cable industry executives); *Owopetu II*, 2011 WL 4433159, at *5 (same). Thus, the *Matrai* court found "no serious dispute" that DirecTV is recognized as retail in the industry, a conclusion reached by other courts too. *Matrai*, 168 F. Supp. 3d at 1362; *Carpenter*, D. Colo. No. 14-cv-02854, Dkt. No. 146, at 14; *see Arnold v. DirecTV, LLC*, 2017 WL 1196428, at *9 (E.D. Mo. Mar. 31, 2017) ("[T]he Court is satisfied that DirecTV meets the 'retail or service establishment' prong of the 7(i) exemption as it has been understood and applied in the cases cited above."); *Roeder v. DirecTV, Inc.*, 2017 WL 151401, at *29 (N.D. Iowa Jan. 13, 2017); *Johnson*, 4

5

F. Supp. 3d at 435-41; *see also La Parne*, 714 F. Supp. 2d at 1041-43 (relying on evidence produced in other cases involving same industry).  These decisions confirm that DirecTV is a retail or service establishment.

Likewise, DirecTV is a retail or service establishment under the second test because its sales are entirely dependent on consumer demand.  In *Alvarado*, the Seventh Circuit considered the purpose of the "retail or service establishment" element.  Judge Posner noted that "[d]emand for services often varies, and when demand drops the seller cannot make up for it, as a maker of goods can do, by producing for inventory rather than for immediate sale."  782 F.3d at 369.  The same is true here.  The number of technicians needed fluctuates based on changes in consumer demand, due to various factors, such as the NFL season, weather events, or a competitor experiencing a service outage.  UF 3-4.  Plaintiffs themselves admit that their work gets busier or slower depending on the number of customers ordering DirecTV.  UF 24.  Because sales are dependent on customers ordering satellite television, DirecTV cannot "stock up" on installations during the slow season.  This fact confirms that DirecTV is a retail or service establishment.  *Matrai*, 168 F. Supp. 3d at 1360.[3]

    b)    Plaintiffs Were Paid Commissions On Goods And Services.

The "hallmark" of a commission is that the pay is "decoupled from actual time worked" and is rather tied to the completion of *sales*.  *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 284 (3d Cir. 2010); *Alvarado*, 782 F.3d at 367 (commission system is one where workers "are paid only if there's been a sale"); *Yi v. Sterling Collision Centers,*

---

[3] *Alston v. DirecTV, Inc.*, 2017 WL 2311588 (D.S.C. May 16, 2017), where the court found that DirecTV had not proved its status as a retail or service establishment as a matter of law, is distinguishable.  The *Alston* court was bound by the Eighth Circuit's rule that employers must prove the application of the exemption by "clear and convincing evidence" (*id.* at *7), a standard not applicable here.  *See La Parne*, 714 F. Supp. 2d at 1038; *see also Jones*, 2013 WL 6072966, at *4 (noting majority view that employer must prove exemption only by "a preponderance of the evidence"). Moreover, the *Alston* court denied summary judgment because DirecTV had "only proffered evidence on the alleged retail nature of Plaintiffs' work at an enterprise-wide level rather than at the establishment level."  *Alston*, 2017 WL 2311588, at *11.  Here, by contrast, DirecTV provides evidence that *all* of its satellite services revenue comes from sales to end-consumers.  UFs 21-24.  Thus, there can be no local DirecTV "establishment" that receives less than 75 percent of its revenue from retail sales.

*Inc.*, 480 F.3d 505, 508 (7th Cir. 2007).  It need not be the worker himself who "makes" the sale to the customer; rather, the only requirement is that his compensation be dependent on a sale being made.  *Horn v. Digital Cable & Comm., Inc.*, 2008 WL 7140826, at *9 (N.D. Ohio Nov. 18, 2008); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1175 (7th Cir. 1987) (noting that "persons not engaged in the sale of goods" can still satisfy the exemption and holding that banquet waiters were exempt when their pay was determined by the size of the banquet).  Further, the amount of pay need not be defined as a percentage of the sale.  *Parker*, 620 F.3d at 283-84.[4]

Plaintiffs' pay clearly qualifies as "commissions" under these standards.  As Plaintiffs acknowledge, they were paid only when a customer ordered DirecTV's satellite services or ordered a repair or additional installation.  UF 25.  Some Plaintiffs also could have earned additional pay for performing "custom" work when customers wanted their cable wires to be installed so that they would not be visible or when a customer purchased a "protection plan," a type of warranty for the equipment.  UFs 26-27.  As with the installation work, the pay for custom labor and protection plans was a set amount based on a particular type of job or sale, with no regard for how long the work took to perform.  UF 28.  Thus, Plaintiffs' pay was tied directly to the sales of satellite service and that DirecTV made.[5]

Because Plaintiffs earned the same amount per installation *regardless of the much worked*, they earned more money by taking on more jobs.  UF 20.  *See Matrai*, 168 F. Supp. 2d at 1363 (technicians were paid by commission because they "could ask for and perform . . . additional work orders and expect to earn more compensation"); *Owopetu v. Nationwide CA TV Auditing Servs., Inc.* (*Owopetu I*), 2011 WL 883703, at *4 (D. Vt.

---

[4] The terminology that the parties use to describe the pay is immaterial. *Alvarado*, 782 F.3d at 367 ("[T]he nomenclature is not determinative").

[5] Although customers do not pay directly for satellite installations, the price of the installation is imposed through a monthly service fee.  UF 29; *Johnson*, 4 F. Supp. 3d at 436 ("The cost for Wave Comm's services is paid by the end consumer," and "it is merely a matter of convenience" that customer pays indirectly through monthly fee).

Mar. 11, 2011).  Because their pay is tied to the sales of satellite services and the completion of installation jobs, Plaintiffs were paid by "commissions."

This conclusion is reinforced by the irregular amount of work.  As Plaintiffs admit, the amount of work fluctuates alongside the number of customers who order DirecTV and thus need installation to complete the sale, which is indicative of a commissions system.  UF 24, 25.  *Alvarado*, 782 F.3d at 368 (window washers were paid by commission in part because number of jobs was based on consumer demand, necessitating irregular hours); *Crawford v. Saks & Co.*, 2016 WL 3090781, at *5 (S.D. Tex. June 2, 2016) (finding commission system in part because amount of work was a function of customer demand); *Owopetu I*, 2011 WL 883703, at *5 (same).

For these reasons, courts reviewing identical cable and satellite installation technician pay systems have no trouble concluding that they are bona fide commission systems within the meaning of the exemption.  *Jones*, 2013 WL 6072966, at *10; *see also Matrai*, 168 F. Supp. 2d at 1363; *Owopetu II*, 2011 WL 4433159, at *3.[6]

                    c)      Plaintiffs Earned More Than 1.5 Times The Minimum Wage.

The exemption's final requirement is that the worker's rate of pay exceeds 1.5 times the minimum wage.  Over the relevant time period, the minimum wage was at most $7.25 per hour.  *See* Dept. of Labor, History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, https://www.dol.gov/whd/minwage/chart.htm.  Thus, the exemption applies to any Plaintiff whose regular rate was at least $10.88.

The regular rate of pay "is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight-time earnings for such hours to obtain the statutory regular rate."  29 C.F.R. § 779.419.  The

---

[6] Neither *Arnold* nor *Roeder* compels a different result.  In those cases, the district courts denied summary judgment based on the evidentiary record.  Thus, the courts noted that "DIRECTV has not pointed to anything in this record demonstrating plaintiffs' compensation was related in any way to the price paid by the customer." *Roeder*, 2017 WL 151401 at *30; *see also Arnold*, 2017 WL 1196428, at *11.  By contrast, here, DirecTV has provided evidence of the manner in which customers are charged for satellite installations, how Plaintiffs were paid for those installations, and the relationship between the two.  UFs 19, 25-29.

allegations in the complaints establish that each Plaintiff, with one exception, earned an effective hourly rate (calculated by dividing weekly pay by hours worked) of more than $11.00 during the time he installed DirecTV satellite (UF 30).

| Plaintiff | Hours Per Week | Weekly Pay[7] | Regular Rate |
|---|---|---|---|
| Lasater | 70 | $1200 | $17.14 |
| Guzik | 50 | $900 | $18.00 |
| Trujeque | 70 | $600 | $8.57 |
| Le | 60 | $875 | $14.58 |
| Lkhagvadorj | 66 | $750 | $11.36 |
| Varas | 60 | $1,000 | $16.67 |
| Nault | 63 | $1,000 | $15.87 |
| Kidd | 55 | $1,200 | $21.82 |
| Solis Juarez | 70 | $1,400 | $20.00 |

Thus, based on their allegations, all Plaintiffs except for Trujeque earned a regular rate in excess of $10.88 per hour and therefore satisfy the third element of the exemption.  *See Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 449 (E.D.N.Y. 2015) (relying on plaintiffs' allegations about hours worked per week to hold that they had been paid more than 1.5 times the minimum wage); *see generally Moore v. IMCO Recycling of CA, Inc.*, 2005 WL 5887179, at *14 n.23 (C.D. Cal. June 29, 2005) (on summary judgment, "admissions in the opposing party's pleadings are admissible").

Although the rate of pay is usually calculated on a week-by-week basis, "if it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method must be adopted."  *Schwind v. EW & Assocs., Inc.*, 371 F. Supp. 2d 560, 567-68 (S.D.N.Y. 2005) (quoting 29 C.F.R. § 776.120).  Here, it is not possible to calculate the precise rate of pay for each week because neither Plaintiffs nor DirecTV tracked the work hours.  UFs 31-32.  Because it is impossible to calculate Plaintiffs' rate of pay each week, it is proper to determine if their rate exceeded 1.5 times the minimum wage over the course

---

[7] This column includes the amounts paid after any chargebacks (deductions).

of their work generally.  *See Gatto v. Mortgage Specialists of Ill., Inc.*, 442 F. Supp. 2d 529, 536 n.5 (N.D. Ill. 2006) (relying on a 58-week period to calculate rate of pay); *Walton v. Un. Consumers Club*, 786 F.2d 303, 307 (7th Cir. 1986).[8]  Indeed, courts have applied this methodology in other cases against DirecTV.  *Carpenter*, D. Colo. No. 14-cv-02854-MJW, Dkt. No. 146, at 15.

In short, pursuant to 29 U.S.C. § 207(i), judgment should be entered in favor of DirecTV on the FLSA overtime claims of all Plaintiffs except Trujeque.

## 2.   Plaintiffs' Minimum Wage Or "Gap Time" Claims Also Fail.

Any minimum wage claims fail because, as shown above, each Plaintiff—including Trujeque—earned more than the FLSA minimum when his weekly pay is averaged across his hours worked.  UF 30; *supra* § III.A.1.c; *see Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (no minimum wage claim when plaintiffs' salary, "when averaged across their total time worked, still payed them above minimum wage"); *Maciel v. City of Los Angeles*, 569 F. Supp. 2d 1038, 1055 (C.D. Cal. 2008); *Balasanyan v. Nordstrom, Inc.*, 913 F. Supp. 2d 1001, 1009 (S.D. Cal. 2012); *Cooper v. DirecTV, LLC*, C.D. Cal. No. 2:14-cv-08097, Dkt. No. 38 at 5-6 (in prior action, Court dismissed minimum wage claims of six plaintiffs, including Nault and Solis Juarez, because alleged earnings exceeded minimum wage when averaged over typical workweek).

Nor can Plaintiffs prove a claim for "gap time"—*i.e.*, unpaid time within the first 40 hours in a week.  *Adair*, 185 F.3d at 1062 n.6 (gap time is non-overtime work that is "not covered by the minimum wage provision because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked").  "While the FLSA allows for recovery of unpaid overtime and unpaid minimum wages, it does not provide for recovery under a

---

[8] Plaintiffs may argue that their earnings should be reduced by the sums expended on business expenses.  They would be mistaken.  *Carpenter*, D. Colo. No. 1:14-cv-02854, Dkt. No. 146 (calculating regular rate by deducting chargebacks but not business expenses).  But even if business expenses are deducted, all Plaintiffs but Lkhagvadorj still earned more than 1.5 times the minimum wage.  UF 33.

gap time theory." *Farris v. Cnty. of Riverside*, 667 F. Supp. 2d 1151, 1161 (C.D. Cal. 2009); *see also Maciel*, 569 F. Supp. 2d at 1056 ("a 'pure gap time' claim is untenable"); *Abbe v. City of San Diego*, 2007 WL 4146696, at *14 (S.D. Cal. Nov. 9, 2007) (same), *aff'd*, 444 F. App'x 189 (9th Cir. 2011); *see also Arnold*, 2017 WL 1196428, at *6; *Lundy v. Catholic Health Syst. of Long Island Inc.*, 711 F.3d 106, 111 (2d Cir. 2013).

In sum, Plaintiffs have no viable claims that DirecTV violated the FLSA by failing to pay non-overtime wages.  These claims should be dismissed.

3.   <u>The FLSA Claims Also Fail For Lack Of The Required Knowledge.</u>

Even if a fact dispute existed concerning the exemption or Plaintiffs' pay, their FLSA claims still would fail because DirecTV had no knowledge that Plaintiffs performed worked for which they were not properly paid.  To prevail on the FLSA claims, Plaintiffs must show that DirecTV "knew or should have known" that they worked hours for which they were not adequately compensated.  *Hertz v. Woodbury County Iowa*, 566 F.3d 775, 781 (8th Cir. 2009); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981); *see also Feaver v. Kaiser Found. Health Plan, Inc.*, 2016 WL 324176, at *4 (N.D. Cal. Jan. 27, 2016); *Dikker v. 5-Star Team Leasing, LLC*, 2017 WL 1030502, at *4 (W.D. Mich. Mar. 17, 2017).

DirecTV had no actual knowledge of any unpaid work.  Plaintiffs were scheduled by their Contracting Companies, and DirecTV did not track Plaintiffs' hours or maintain records of the hours worked.  UFs 13-14, 32.  *See McCune v. Oregon Sr. Servs. Div.*, 894 F.2d 1107, 1111-12 (9th Cir. 1990) (joint employer was not liable when co-employer alone knew about number of hours worked).

Nor did DirecTV have constructive knowledge of unpaid work.  "The FLSA's standard for constructive knowledge in the overtime context is whether the [defendant] *should* have known, not whether it *could* have known" of unpaid hours.  *Hertz*, 566 F.3d at 782 (emphasis added); *see also Newton v. City of Henderson*, 47 F.3d 746, 750 (5th Cir. 1995) (reversing FLSA trial judgment due to inadequate evidence that defendant should have known about overtime hours).  Plaintiffs may argue that DirecTV could

1    have surmised the number of hours by reviewing SIEBEL data, but that argument fails.

2    While DirecTV uses the SIEBEL program to schedule work orders, it is merely a

3    dispatch system meant to ensure that a technician is available to service a customer.  UF

4    34.  The system is not used for timekeeping purposes and it does not accurately

5    document the time a technician spends installing DirecTV.  UFs 35-36.  For example,

6    while SIEBEL contains certain fields labeled "Actual Start Time" and "Actual End

7    Time," these times are tied to when the technician manually updates the status of the

8    order and are often not indicative of the actual hours worked for a variety of reasons.

9    UF 35 (*e.g.*, a work order is sometimes not "closed" in SIEBEL until one or two days

10   after the installation occurred because of a technical issue that prevented the work order

11   from being completed).  Moreover, although SIEBEL contains an "expected" duration

12   for a work order, that duration is aspirational and does not reflect the actual time spent

13   on a particular work order.  UF 36.  Indeed, most Plaintiffs acknowledge that the actual

14   time spent on a particular type of installation varies widely.  UF 37.  For these reasons,

15   the SIEBEL system did not impart notice of Plaintiffs' actual work hours.

16        *Hertz* confirms this point.  There, the plaintiffs argued that the existence of a

17   tracking program called "Computer Aided Dispatch" (CAD)—used to optimize the

18   routing and placement of officers—created constructive notice of the number of hours

19   worked.  But "[a]ccess to records indicating that employees were working overtime . . .

20   is not necessarily sufficient to establish constructive knowledge."  566 F.3d at 781-82.

21   While the defendants "technically had access to the CAD records, they were not used

22   for payroll purposes."  *Id.*  Thus, "it was not reasonable to require that the County weed

23   through non-payroll CAD records" to determine if employees worked overtime.  *Id.*

24   Likewise, even if the hours that a technician worked could be divined from the SIEBEL

25   data (and they cannot), DirecTV was not required to use the data in that way.

26        Moreover, evidence that DirecTV knew about Plaintiffs' *hours* would not suffice

27   because DirecTV also lacked knowledge about Plaintiffs' *pay*.  In the same situation, a

28   court recently held that DirecTV's lack of knowledge about technicians' pay foreclosed

an FLSA claim.  *Carpenter*, D. Colo. No. 14-cv-02854-MJW, Dkt. No. 146.  The court rejected the claims of an independent contractor who, like here, was paid by the Contracting Companies and directed all inquiries about his pay to them.  *Id*. at 16.  DirecTV "did not have any say one way or another about whether [the installation companies] paid him as a W-2 employee or a 1099 contractor," and there was "no evidence that DirecTV had any role with respect to how much or when he got paid for his work . . . , other than to track customer satisfaction scores that Wireless used to determine whether he earned a monthly bonus."  *Id*. at 17.  These facts foreclosed the claims:  "*If Defendant had no knowledge or involvement with his compensation it cannot have any knowledge of unpaid overtime.*"  *Id*. (emphasis added).

These facts are equally true here.  Again, Plaintiffs were paid by the installation companies at rates they set with no input from DirecTV.  UF 15-17.  The Contracting Companies did not inform DirecTV of the rates, which varied among the Contracting Companies and the technicians.  UFs 18, 38, 39.  Nor did Plaintiffs inform DirecTV about their pay.  UF 40.  Furthermore, the Contracting Companies impose "chargebacks" on technicians' pay in some situations, such as when a quality control check revealed that an installation was inadequate.  UFs 41, 43.  When a Contracting Company charges back a technician, it deducts a certain sum from the technician's pay.  UFs 42, 43.  DirecTV plays no role in determining whether to impose a chargeback or the amount.  UF 43.  The Contracting Companies do not notify DirecTV that they have imposed a chargeback.  UF 44.  Therefore, not only did DirecTV lack knowledge as to the initial rates that Plaintiffs were compensated, but it also was unaware if Plaintiffs' compensation was altered by these chargebacks.  In sum, DirecTV simply had no reason to know how or how much Plaintiffs earned.  Lacking this information, DirecTV "cannot have any knowledge of unpaid overtime" or that the hourly pay dipped below the minimum wage.

Because Plaintiffs cannot prove that DirecTV possessed the requisite knowledge of unpaid time, their FLSA claims necessarily fail, regardless of whether the exemption applies or their hourly pay exceeded the statutory minimum.

**B.     The Court Should Determine The Time Periods At Issue.**

1.     A Two-Year Limitations Period Governs Plaintiffs' FLSA Claims.

The statute of limitations for FLSA claims is two years and is extended to three years only if a violation was "willful."  29 U.S.C. § 255(a).  Plaintiffs must prove willfulness.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  The mere fact that a violation of the FLSA may have occurred does not establish—or even create a presumption of—willfulness.  *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990) ("Brookshire's actions will only be deemed willful if they are proved so— and no presumption may circumvent the patent willfulness requirement explicit in § 255.");  *Cancilla v. Ecolab, Inc.*, 2013 WL 1365939, at *4 (N.D. Cal. Apr. 3, 2013). Rather, a violation is "willful" only if the plaintiff shows that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993).  "If an employer acts unreasonably, but not recklessly, in determining its legal obligation," the two-year period applies.  *McLaughlin*, 486 U.S. at 135 n.13; *see also Serv. Employees Int'l Union, Local 102 v. Cnty. of San Diego*, 60 F.3d 1346, 1355-56 (9th Cir. 1994).

Plaintiffs cannot possibly meet their burden of proving that DirecTV's alleged violations of the FLSA were willful.  Even if a factfinder could conclude that DirecTV employed Plaintiffs and violated the FLSA, the company certainly did not act "recklessly" in determining its legal obligations.  Indeed, even though Plaintiffs' counsel has filed nearly identical suits against DirecTV across the country, *no court* has ever found DirecTV liable under the FLSA for the practices challenged by Plaintiffs.

To start, DirecTV reasonably contends that it did not employ Plaintiffs.  Because an employment relationship is a prerequisite for an FLSA claim, a finding of willfulness

is precluded so long as the company's decision in this regard was not "reckless."
DirecTV's position was not reckless given these undisputed facts:

- Plaintiffs were engaged by outside Contracting Companies as independent contractors, with no direct involvement from DirecTV (UFs 7, 8);

- Plaintiffs did not enter into any written contracts with DirecTV (UF 9);

- The Contracting Companies (not DirecTV) paid Plaintiffs (UF 15);

- The Contracting Companies scheduled Plaintiffs' work (UFs 13, 14);

- DirecTV does not maintain any timekeeping or employment records (UFs 10, 32);

- Plaintiffs were responsible for purchasing their own tools, equipment, and trucks and deducted these expenses from their taxable income (UFs 45, 46)

- The Contracting Companies gave Plaintiffs Form 1099s (UF 47); and

- Plaintiffs paid taxes as independent contractors (UF 48).

Considering these facts, it was certainly not *reckless* for DirecTV to conclude that it did not employ Plaintiffs (either directly or jointly).  Indeed, satellite and cable service providers routinely use contractor technicians to handle fluctuations in customer demand, and multiple courts have held that those technicians are not employees of the service provider.  *E.g.*, *Gremillion v. Cox Comm's Louisiana*, 2017 WL 1321318, at *7 (E.D. La. Apr. 3, 2017); *Thornton v. Charter Comm's, LLC*, 2014 WL 4794320, at *15, 17 (E.D. Mo. Sept. 25, 2014); *Zampos v. W & E Comms., Inc.*, 970 F. Supp. 2d 794, 803 (N.D. Ill. 2013); *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 677 (D. Md. 2000), *aff'd sub nom.*, *Chao v. Mid-Atlantic Installation Servs, Inc.*, 16 F. App'x 104, 108 (4th Cir. 2001).[9]  In fact, just last year, another district court held that, as a matter of law, DirecTV did not employ satellite technicians like Plaintiffs, who

---

[9] *See also Bennett v. Unitek Global Servs., LLC*, 2013 WL 4804841, at *11 (N.D. Ill. Sept. 9, 2013); *Valdez v. Cox Comm. Las Vegas*, 2012 WL 1203726 (D. Nev. Apr. 11, 2012); *Jean-Louis v. Metropolitan Cable Comms., Inc.*, 838 F. Supp. 2d 111, 125 (S.D.N.Y. 2011); *Lawrence v. Adderley Indus., Inc.*, 2011 WL 666304, at *11 (E.D.N.Y. Feb. 11, 2011); *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 692-93 (D. Md. 2010); *Scruggs v. Skylink, Ltd.*, 2011 WL 6026152, at *8 (S.D. W. Va. Dec. 2, 2011); *Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 784 (11th Cir. 2006) (Unpub. Disp.); *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1326-28 (S.D. Fla. 2001).

contracted with subcontracting companies installing DirecTV satellite service.  *Roslov v. DirecTV Inc.*, 218 F. Supp. 3d 965, 978 (E.D. Ark. 2016).

Ninth Circuit precedent bolsters DirecTV's position that it did not employ Plaintiffs.  In *Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2004), the Ninth Circuit considered a similar scenario in which Air France contracted out its baggage-handling service to various contractors.  Employees of the baggage-handling companies sued Air France claiming that it employed them under the FLSA.  The Ninth Circuit considered various factors, including that Air France did not hire the plaintiffs or set their pay, and held that Air France did not employ the plaintiffs as a matter of law.  *Id.* at 953.

This authority shows that DirecTV's position that it did not employ Plaintiffs was, at the very least, reasonable.  *See SEIU Local 102*, 60 F.3d 1346, 1355-56 (reversing finding that FLSA violation was willful when employer "relied on substantial legal authority").  Even if Plaintiffs quibble over distinctions between the facts here and those in the other cases on point, the existence of these cases at a minimum reflects a lack of clarity in the law, foreclosing Plaintiffs' claim that DirecTV violated the FLSA willfully. *See Reich v. Japan Enterprises Corp.*, 91 F.3d 154, 1996 WL 387667, at *3 (9th Cir. 1996) (no willfulness when issues were "not completely clear areas of law"); *Callahan v. City of Sanger*, 2015 WL 2455419, at *13 (E.D. Cal. May 22, 2015) (no willfulness "[g]iven the lack of established published case law on this issue"); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 703 (3d Cir. 1994).[10]

A finding of willfulness would be especially improper given DirecTV's additional defenses to the FLSA claims.  As shown above, Plaintiffs' FLSA claims fail for various reasons *even if an employment relationship existed*.  Thus, Plaintiffs cannot prove

---

[10] At the deposition of a former senior vice president for DirecTV, Plaintiffs' counsel asked questions about whether he discussed "co-employment issues" with DirecTV's counsel.  Any attempt to use this testimony to demonstrate willfulness would be misguided.  At most, this fact would show that DirecTV knew that the FLSA was "in the picture," a standard for willfulness that the Supreme Court rejected.  *McLaughlin*, 486 U.S. at 132.  Indeed, the fact that DirecTV discussed these issues with counsel would be evidence that it was making efforts to comply with the law.  *E.g.*, Baker Dep. 81:8-19 ("[W]e were discussing ways to avoid creating [joint employment] issues.").

overtime violations because they fall squarely within an exemption, they cannot prove minimum wage violations because they earned significantly more than minimum wage, and they cannot recover "gap time" pay because it is simply not available under the FLSA. Each of these defenses finds ample support in the law. Therefore, even apart from its defense that the FLSA does not even apply (because no employment relationship existed), DirecTV has substantial defenses that Plaintiffs' were paid in a manner that is entirely consistent with the statute, foreclosing a finding of willfulness.

Plaintiffs' contrary arguments should be rejected. Plaintiffs will likely cite *Perez v. Lantern Light Corp.*, 2015 WL 3451268 (W.D. Wash. May 29, 2015), but that case is inapposite. In *Perez*, a district court held that DirecTV jointly employed technicians of an installation company that had defaulted in a suit by the U.S. Department of Labor. But *Perez* has no bearing here. First, though the court found that, based on the specific facts at issue, DirecTV jointly employed the Contracting Company's employees, it never made any determination about whether the payment scheme actually violated the FLSA. Further, *Perez* involved *employees* of a Contracting Company, not independent contractors like Plaintiffs. Additionally, the Contracting Company at issue in *Perez* did not engage any of the Plaintiffs here, so its treatment of its *employee* technicians cannot be mechanically applied to this case. In short, given the many decisions favorable to DirecTV, *Perez* is, at most, an outlier. *See Gremillion*, 2017 WL 1321318, at *5. It simply does not suggest that DirecTV acted in reckless disregard of the law.[11]

Likewise, the mere fact that DirecTV has been sued—without being held liable—does not suggest willfulness. *Fugate v. Dolgencorp, LLC*, 2012 WL 5268494, at *7 (N.D. Ind. Oct. 23, 2012) ("The mere filing of lawsuits cannot be deemed sufficient to put Dollar General on notice that its policy is violative of the FLSA."); *compare Chao v. A-One Medical Servs., Inc.*, 346 F.3d 908, 919 (9th Cir. 2003) (finding willfulness when defendant was found to have violated FLSA on multiple prior occasions). Because no

---

[11] Additionally, *Perez* was decided after all but two Plaintiffs (Lasater and Guzik) had stopped installing DirecTV satellite.

DEFENDANT DIRECTV, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

court or agency has ever found that the structure Plaintiffs challenge violates the FLSA, Plaintiffs cannot seriously contend that DirecTV acted in reckless disregard of the law.

*Chesley v. DirecTV, Inc.*, Case No. 1:14-cv-00468, Dkt. No. 37 (D.N.H. June 8, 2015), is illustrative. There, the same counsel made similar allegations, claiming that DirecTV adopted a "fissured employment" scheme to evade its duties under the FLSA. Yet the court granted DirecTV's motion to dismiss the "willfulness" claim. *Id*. at 18. The court explained that "a fissured employment scheme is not *per se* illegal," and that, "at most, the allegation shows that defendants were aware of the FLSA and attempted to align their conduct in a manner that was cost effective for them while not violating the FLSA." *Id*. "Such circumstances do not rise to the level of willfulness." *Id.*

For all these reasons, Plaintiffs cannot prove that DirecTV willfully violated the FLSA. Therefore, the two-year statute of limitations applies.

### 2.   The Statute Of Limitations Resumed Running In 2016.

The relevant period is further curtailed because the statute of limitations resumed running for several months in 2016, starting when the Court dismissed the prior multi-plaintiff actions and ending when each Plaintiff filed his individual lawsuit.

Each Plaintiff originally asserted FLSA claims (but not state law claims) against DirecTV by opting into a collective action in 2012 or 2013. Five Plaintiffs (Guzik, Kidd, Lasater, Le, and Varas) opted into a case in the Eastern District of Louisiana, *Lang v. DirecTV LLC* (Case No. 10-cv-01085). UF 49. The other four Plaintiffs (Juarez, Lkhagvadorj, Trujeque, and Nault) opted into a case in the Eastern District of Missouri, *Arnold v. DirecTV LLC* (Case No. 10-cv-00352). UF 50. The *Lang* and *Arnold* courts later dismissed Plaintiffs and tolled the limitations period so they could file lawsuits in their home states. UF 51 (*Lang* Dkt. No. 467 at 2 ("The statute of limitations for each opt-in plaintiff shall continue to be tolled for sixty (60) days from the entry of this Order.")); UF 52 (*Arnold* Dkt. No. 244 at 2 ("The statute of limitations for the Plaintiffs' decertified claims shall continue to be tolled for ninety (90) days from the date of the entry of this Order to allow for refilling [*sic*] if they so choose.")).

Each Plaintiff then joined one of two multi-plaintiff lawsuits in this Court.[12]  On January 4, 2016, the Court dismissed all nine Plaintiffs, permitting them to re-file individual lawsuits if they chose.  UF 55.  Unlike in *Lang* and *Arnold*, the Court did *not* order that the statute of limitations be tolled (presumably because Plaintiffs were free to file their individual lawsuits without delay).  UF 56.  Plaintiffs eventually filed the instant individual actions between February 26, 2016 and August 1, 2016.  UF 57.

There is no basis to conclude that the statute of limitations was tolled during this interim period.  To be sure, the Court did not order any such tolling, as the courts did in *Lang* and *Arnold*.  Nor was there any equitable tolling, which applies only "when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time."  *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).  Neither of those requirements is met here because Plaintiffs' filing of their individual actions was entirely within their control.  *See Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1140 (D. Nev. 1999) (no equitable tolling where "the ability to file [FLSA claims] was solely within Plaintiffs' control"); *Adedapoidle-Tyehimba v. Crunch, LLC*, 2013 WL 4082137, at *7 (N.D. Cal. Aug. 9, 2013) (no equitable tolling even where plaintiffs' opt-ins to FLSA collective action were delayed by unsuccessful motions to dismiss).  Indeed, the same lawyers filed complaints that are nearly identical to those in the prior actions, so there was nothing preventing Plaintiffs from filing the instant actions immediately after the Court's January 4, 2016 order.

Because the FLSA claims are subject to a two-year limitations period that resumed running on January 4, 2016, until each Plaintiff filed his individual action, the period relevant to each Plaintiff's claims is as listed in Appendix B.[13]

---

[12] The five Plaintiffs from *Lang* filed *Addison v. DirecTV LLC* (Case No. 13-cv-08109) on November 1, 2013.  UF 53.  The four Plaintiffs from *Arnold* filed *Cooper v. DirecTV LLC* (Case No. 14-cv-08097) on October 20, 2014.  UF 54.

[13] A finding that the statute of limitations resumed running following the Court's decisions in *Cooper* and *Addison* would apply equally to Plaintiffs' state law claims.

### C.     The Court Should Determine The Proper Measure Of Overtime Pay.

Plaintiffs claim that they are entitled to overtime damages under both the FLSA and California law.  These damages require the calculation of the "regular rate of pay" and a determination of whether the defendant already has paid "straight time" for all hours.  *See* 29 U.S.C. § 207(a)(1); Cal. Lab. Code § 510(a).  As shown below, this standard should be applied in two respects that would substantially curtail Plaintiffs' potential damages.  First, each Plaintiff's regular rate of pay must be calculated by dividing his pay by *all* of his hours worked.  Second, because Plaintiffs already received straight-time pay for all of their hours, they may recover only an additional "half-time" for any overtime hours (0.5 times the regular rate)—not "time and a half."

### 1.     The Regular Rate Equals Total Pay Divided By Total Hours.

To determine the overtime premium, it is necessary to calculate an employee's "regular rate of pay."  The parties dispute the calculation of this rate.  DirecTV contends that the regular rate is determined by dividing Plaintiffs' weekly pay by the total hours worked in a week.  By contrast, Plaintiffs propose dividing the weekly pay by the number of "productive" hours, meaning the time spent actually performing a satellite installation as opposed to, for example, time spent traveling between jobs or communicating with the Contracting Company.  As shown below, Plaintiffs' proposed methodology contravenes the relevant authority and would result in a windfall.

A worker's regular rate "is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109; *see also Frank v. McQuigg*, 950 F.2d 590, 591–92 (9th Cir. 1991) ("The regular rate is determined by dividing an employee's total remuneration . . . in any workweek by the total number of hours actually worked by him in that workweek."); *Ontiveros v. Safelite Fulfillment, Inc.*, 2017 WL 679167, at *7 (C.D. Cal. Feb. 7, 2017).

This calculation applies to workers, like Plaintiffs, who are paid on based on the number and type of jobs completed (referred to by FLSA regulations as a "job rate").

> If the employee is paid a flat sum for . . . doing a particular job, without regard to the number of hours worked . . . at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such . . . job rates in the workweek and dividing by the total hours actually worked.

29 C.F.R. § 778.112.  *See also Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 268-69 (5th Cir. 2000) (section 778.112 applied to workers paid a set amount for performing a job without regard for the number of hours worked).  Notably, the job-rate regulation does not differentiate between "paid" or "unpaid" hours or between "productive" and "non-productive" time.  The touchstone is the "hours actually worked."

This provision applies to Plaintiffs, who are paid a flat sum for performing various types of installations and other jobs (such as custom labor), without regard to the hours worked.  UF 19.  As Plaintiffs' allege, these fixed sums were their sole compensation.  UF 58.  Therefore, under section 778.112, Plaintiffs' regular rate must be determined by dividing total pay by total hours worked.  *See Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d 1302, 1317-1318 (S.D. Fla. 2007) (when limousine drivers were paid based on the number of jobs completed, regular rate was "equal to the total amount paid for all jobs in a workweek, divided by the total hours spent actually working on Defendants' behalf," and rejecting plaintiffs' position that compensation should be divided by only productive work); *Gomez v. H & R Gunlund Ranches, Inc.*, 2010 WL 5232973, at *1, 6 (E.D. Cal. Dec. 16, 2010); *compare* 29 C.F.R. § 779.113 (noting that the regular rate for *salaried* employees is computed "by dividing the salary by the number of hours *which the salary is intended to compensate*," not the number of hours actually worked"). (emphasis added).

Moreover, section 778.112 applies regardless of whether Plaintiffs or the Contracting Companies refer to the pay as a "piece-rate."  Although a separate regulation covers "piece-rates" (section 778.111), it applies only when an employee is paid a flat sum for a particular job *on top of other pay*, such as hourly pay for waiting

time.  If, like here, a worker is paid *solely* for completing a particular job or task, section 778.112 controls.  *See Serrano v. Republic Servs., Inc.*, __ F. Supp. 3d __, 2017 WL 24306, at *2-3 (S.D. Tex. Jan. 3, 2017) (describing differences between sections 778.112 and 778.111 and noting that the former applies "if the employee is paid a flat sum without regard to the number of hours and receives no other form of compensation").  And the parties' nomenclature simply does not matter.  *Cf. Alvarado*, 782 F.3d at 367 (noting in the context of a different FLSA provision that parties' use of the term "piece-rate" did not alter the "reality," "which overcomes the nomenclature").

But *even if* the FLSA "piece-rate" provisions applied, the calculation still would involve dividing total pay by total hours worked.  *See* 29 C.F.R. § 778.111.[14]  *See also Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ("In the case of piece work wages, this regular rate coincides with the hourly rate actually received for all hours worked during the particular workweek, such rate being the quotient of the amount received during the week divided by the number of hours worked.");  *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 996 (9th Cir. 2017);  *Adami v. Cardo Windows, Inc.*, 2015 WL 1471844, at *12 (D.N.J. Mar. 31, 2015) (plaintiffs' expert erred in failing to rely on section 778.111 in calculating regular rate for piece rate workers).

Plaintiffs likely will rely on a different Code provision—29 C.F.R. § 778.318—to support their view that total pay should be divided by "productive" hours only, but that provision is inapposite.  That section concerns the hours that should be "counted" and

---

[14] Section 778.111 reads: "When an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions).  This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week."

In other cases, Plaintiffs' counsel has misread the phrase, "the number of hours worked in the week for which such compensation was paid," to mean that the pay should be divided only by the number of *hours* for which such compensation was paid, *i.e.*, the productive hours.  But the phrase "for which such compensation was paid" modifies the noun "week" and not the noun "hours."  So, the pay should be divided by [all hours worked in the [week for which such compensation was paid]].  *See Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) ("[T]he grammatical 'rule of the last antecedent,' [provides that] a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.").

"paid for" by an employer.   The interpretive guidance states that—absent an agreement that the pay is meant to cover all hours worked including "nonproductive hours"—all overtime hours worked must be "counted" and "paid for."  29 C.F.R. § 778.318(a).  In other words, an employee is entitled to overtime pay for all hours over 40, both productive and nonproductive alike.  But notably, section 778.318(a) by its own terms does not concern how the regular rate of pay should be calculated in the first place.

Likewise, California law requires a similar calculation of the regular rate for workers paid based on the number of jobs completed.  *Sandoval v. M1 Auto Collisions Centers*, 2016 WL 6561580, at *19 (N.D. Cal. Sept. 23, 2016) ("California follows the federal standard for purposes of determining, under the Labor Code, what constitutes an employee's regular pay subject to an overtime rate") (quoting *Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal. 4th 217, 242 n.14 (2007)).  Thus, under California law, too, Plaintiffs' regular rate is calculated by dividing total pay by the total hours worked, as the Division of Labor Standards Enforcement has confirmed.  *See* DLSE Op. Ltr. 1990.07.23 (in situation where employees hired to clean and maintain supermarkets were paid on a "per unit" basis, "the regular rate of pay is determined in California by dividing the total amount earned by the total number of hours worked"), (https://www.dir.ca.gov/dlse/opinions/1990-07-23.pdf); *see also* DLSE Op. Ltr. 1993.02.22-1, (https://www.dir.ca.gov/dlse/opinions/1993-02-22-1.pdf); 2002 DLSE Enforcement Policies & Interpretations Manual, § 49.2.1.2 (the "most commonly used method of calculation" is to "[c]ompute the regular rate by dividing the total earnings for the week, including earnings during overtime hours, by the total hours worked during the week, including the overtime hours") (https://www.dir.ca.gov/dlse /DLSEManual/dlse_enfcmanual.pdf).[15]

---

[15] The California Labor Code does not differentiate between "piece-rate" and "job-rate" as the FLSA does, and rather refers to both of these systems as "piece-rate." Regardless of terminology, the above formula applies to situations—like here—where Plaintiffs are paid solely on the basis of completing a task regardless of the number of hours worked.  DLSE Opinion 1993.02.22 ("If the employee were employed full time as a gold instructor and all of his compensation were based upon the piece rate he is paid,

23

Thus, under both federal and California law, the regular rate of pay equals a Plaintiff's weekly compensation divided by the number of hours he worked that week.

### 2.      Overtime Damages Equal One-Half Times The Regular Rate.

While FLSA overtime is generally paid at 1.5 times the regular rate, when an employee, like Plaintiffs, is paid a flat sum for performing a particular task or job, "[h]e is then entitled to extra *half-time pay* at th[e] regular rate for all hours worked in excess of 40 in the workweek." 29 C.F.R. § 778.112 (emphasis added). The job rate already compensated the worker for *all* of his hours (including overtime hours), so only an extra one-half of the regular rate is necessary to reach the overtime premium. 29 U.S.C. § 207(a)(1). Notably, it does not matter whether an employee understood that the job rate was meant to cover nonproductive time; all that matters is that he was paid a set amount for completing a particular task. *Powell*, 514 F. Supp. 2d at 1318 (section 778.112 "does not require that Plaintiffs understand that a job-rate cover the hours the job demands"); *Hartsell v. Dr. Pepper Bottling Co. of Texas*, 207 F.3d 269, 273 (5th Cir. 2000) (section 778.112 "does *not* require that employee and employer have a mutual understanding" of what job rate was meant to cover) (emphasis original).[16]

The same is true under California law. *See* DLSE Op. Ltr. 1993.02.22 (employer of worker paid by task must "pay the worker half the regular hourly rate for all overtime hours"); DLSE Op. Ltr. 1990.07.23 ("The employee is entitled to half of th[e] 'regular rate' for each hour over eight in one day (up to and including 12 hours in a day) and forty hours in a week."); 2002 DLSE Enforcement Policies & Interpretations Manual, § 49.2.1.2 ("[F]or each overtime hour worked, the employee is entitled to an additional

---

the correct method to calculate his regular rate would be divide the compensation received by <u>all</u> of the hours worked. . .") (emphasis original).

[16] Even if the pay is deemed a "piece rate," the potential overtime damages still would be only half the regular rate. *Brunozzi*, 851 F.3d at 996 ("Only additional half-time pay is required in such cases where the employee has already received straight-time compensation at piece rates or by supplementary payments for all hours worked." (quoting 29 C.F.R. § 778.111(a)); *see also Thompson v. Capstone Logistics, L.L.C.*, 2016 WL 4570817, at *2 (S.D. Tex. Aug. 31, 2016) ("[T]he regular rate of employees paid the production or piece rate pay is equal to the employee's earnings for the week divided by the total number of hours that the employee worked, and his hourly overtime premium rate is equal to one-half of the employer's regular rate of pay.").

1    *one-half the regular rate* for hours requiring time and one-half and to an additional full

2    rate for hours requiring double time") (emphasis added).

3          Therefore, Plaintiffs—having already been compensated by the job rate (as well

4    as any supplemental minimum wages allegedly owed) for all hours worked—may

5    recover only additional half-time for any overtime hours.[17]

6    **IV.    CONCLUSION**

7          For the foregoing reasons, DirecTV respectfully requests that the Court grant its

8    motion and hold as follows:  First, the FLSA claims fail because (a) all Plaintiffs except

9    Trujeque are exempt from the FLSA's overtime requirements; (b) each Plaintiff earned

10   more than the statutory minimum; (c) the FLSA does not require gap time pay; and,

11   (d) in any event, DirecTV lacked the requisite knowledge of unpaid work.  Second, in

12   the alternative, the two-year statute of limitations governs Plaintiffs' FLSA claims and

13   resumed running when the Court dismissed the multi-plaintiff actions until each Plaintiff

14   filed his individual lawsuit.  Third, potential overtime damages equal one-half times the

15   regular rate, which is determined by dividing total weekly pay by all hours worked.

16

17   Dated:  July 7, 2017              AKIN GUMP STRAUSS HAUER &
                                       FELD LLP
18

19                                     BY   */s/ Gregory W. Knopp*
20                                           Gregory W. Knopp
                                       Attorneys for Defendant DIRECTV LLC
21

22

23

24

25   ───────────────────
     [17] Plaintiffs may contend that certain hours were "nonproductive" and that they
26   are entitled to supplemental minimum wages for that time under California law.
     DirecTV maintains that Plaintiffs were properly paid for all hours worked through the
27   job rate, but that question is immaterial to this motion.  While the availability of
     supplemental minimum wages could impact the *amount* of overtime damages (by
28   increasing the regular rate), it does not affect the *methodology* for calculating the
     damages.

DEFENDANT DIRECTV, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION

**APPENDIX A**

| Plaintiff | Company | Dates[1] |
|---|---|---|
| Guzik | Empire Communication Services | 2008 to present |
| Kidd | RCC | 2007 to May 2010 |
| | Christian Installation Group | May 2010 to January 2012 |
| Lasater | Christian Installation Group | June 2007 to February 2013; and June 2014 to present |
| Le | Satek Communications | August, September, or October 2009 to mid-June 2012; and July 2012 to August 3, 2012 |
| Lkhagvadorj | Skylink | August 2009 to August 2010 |
| | Satellite Service Pros | September or October 2010 to March 18, 2011 |
| Nault | Precision Technologies | May 2009 to May 2010 |
| | Satellite Services | June 2010 to October 2011 |
| | Empire Communication Services | 2012 |
| Juarez | HD Satellite Services | 2010; and January 2011 to November 2013 |
| Trujeque | AIS | September 2010 to June 2011 |
| | JBS | June 2011 to January 2012 |
| | MDD Communication | February 2012 to August 2012 |
| | Satek Communications | August 2012 to January 2013 |
| | MPJ Satellite | May 2013 to August 2013 |
| Varas | Satellite Services | February 2009 to February 2012 |

---

[1] *See generally* evidence supporting UF 7 regarding the Contracting Companies and timeframes that Plaintiffs claim are relevant to each Plaintiff. As per its various arguments regarding the applicable limitations periods, DirecTV's position is that this listing is over inclusive as to some Plaintiffs.

**APPENDIX B**

| Plaintiff | Date FLSA Opt-In Filed | Original Start of Limitations Period | Date Individual Action Filed | Current Start of Limitations Period |
|---|---|---|---|---|
| Guzik | 9/19/12 | 9/19/10 | 3/22/16 (78 days after dismissal from *Addison*) | 12/6/10 |
| Kidd | 7/30/12 | 7/30/10 | 3/3/16 (59 days after dismissal from *Addison*) | 9/27/10 |
| Lasater | 1/3/13 | 1/3/11 | 2/26/16 (53 days after dismissal from *Addison*) | 2/25/11 |
| Le | 1/3/13 | 1/3/11 | 2/26/16 (53 days after dismissal from *Addison*) | 2/25/11 |
| Lkhagvadorj | 3/18/13 | 3/18/11 | 3/3/16 (59 days after dismissal from *Cooper*) | 11/17/10[1] |
| Nault | 2/27/13 | 2/27/11 | 8/1/16 (210 days after dismissal from *Cooper*) | 3/29/11 |
| Solis Juarez | 1/31/13 | 1/31/11 | 3/3/16 (59 days after dismissal from *Cooper*) | 10/2/10 |
| Trujeque | 3/1/13 | 3/1/11 | 3/2/16 (58 days after dismissal from *Cooper*) | 10/30/10 |
| Varas | 7/25/12 | 7/25/10 | 2/29/16 (56 days after dismissal from *Addison*) | 9/19/10 |

---

[1] The FLSA statute of limitations was tolled in *Arnold* for 180 days starting October 8, 2011.  *Arnold* Dkt. No. 46 at 1 (granting protective order for "up to 30 days from the date that the Court rules on Defendants' motions to dismiss and or stay th[e] action . . . with the proviso that the statute of limitations for a collective action under the FLSA shall be tolled during the pendency of the Protective Order"); *see also Arnold* Dkt. No. 49 (deciding motions on March 7, 2011).  This affects the limitations period for Lkhagvadorj, Nault, Solis Juarez, and Trujeque.