1  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   GREGORY W. KNOPP (SBN 237615)
2  SUSAN K. LEADER (SBN 216743)
   GALIT A. KNOTZ (SBN 252962)
3  JONATHAN P. SLOWIK (SBN 287635)
   gknopp@akingump.com
4  sleader@akingump.com
   gknotz@akingump.com
5  jpslowik@akingump.com
   1999 Avenue of the Stars, Suite 600
6  Los Angeles, CA 90067
   Telephone:   310-229-1000
7  Facsimile:   310-229-1001

8  Attorneys for Defendant
   DIRECTV, LLC

9

10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14  CANH LE,                          Case No. 2:16-cv-01369-SVW-ASx

15              Plaintiff,            **DEFENDANT DIRECTV, LLC'S**
                                      **OPPOSITION/CROSS-MOTION FOR**
16       v.                           **SUMMARY JUDGMENT**
                                      **REGARDING DIRECTV'S LACK OF**
17  DIRECTV, LLC,                     **EMPLOYMENT RELATIONSHIP**
                                      **WITH PLAINTIFFS**
18              Defendant.
                                      Date:      September 11, 2017
19                                    Time:      1:30 p.m.
                                      Dept.:     10A
20                                    Judge:     Stephen V. Wilson

21                                    [Separate Statement, Response to
                                      Plaintiff's Statement of Uncontroverted
22                                    Facts and Conclusion of Law; Objections
                                      to Evidence; Compendium of Evidence;
23                                    Notice of Lodging USB Drive; and
                                      [Proposed] Judgment filed concurrently]
24
                                      Date Action Filed:    February 26, 2016
25                                    Pretrial Conference: November 6, 2017
                                      Trial Date:           November 7, 2017
26

27

28

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 11, 2017 at 1:30 p.m., or as soon thereafter as may be heard in Courtroom 10A of the United States Courthouse, located at First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, California 90012, Defendant DirecTV, LLC, ("DirecTV") will and hereby does move for summary judgment as to plaintiffs Paul Guzik, Jeffery Kidd, Jeremy Lasater, Canh Le, Mendamar Lkhagvadorj, Jamie Nault, Armando Solis Juarez, Henry Trujeque, and David Varas (collectively, "Plaintiffs") on the following grounds:[1]

1. Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") fail as a matter of law because DirecTV did not employ Plaintiffs.

2. Plaintiffs' claims under California law fail as a matter of law because DirecTV did not employ Plaintiffs.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Compendium of Evidence, any matter upon which the Court may take judicial notice, all pleadings and papers in the Court's file, and upon such argument as may be made at the hearing on this Motion. This Motion is made following the telephone conference of counsel pursuant to Local Rule 7-3, which took place on June 23, 2017.

Dated:  August 9, 2017                    AKIN GUMP STRAUSS HAUER & FELD LLP


                                          By:  _s/ Gregory W. Knopp_____
                                                   Gregory W. Knopp
                                          Attorneys for Defendant DIRECTV LLC

---

[1] DirecTV is filing a Notice of Related Filing and a Proposed Judgment in each of the eight other related cases: *Lasater v. DIRECTV, LLC,* Case No. 2:16-cv-01373-SVW-AS, *Varas v. DIRECTV, LLC,* Case No. 2:16-cv-01395-SVW-AS, *Lkhagvadorj v. DIRECTV, LLC,* Case No. 2:16-cv-01502-SVW-AS, *Trujeque v. DIRECTV, LLC,* Case No. 2:16-cv-01477-SVW-AS, *Guzik v. DIRECTV, LLC,* Case No. 2:16-cv-01967-SVW-AS, *Kidd v. DIRECTV, LLC,* Case No. 2:16-cv-01506-SVW-AS, *Solis Juarez v. DIRECTV, LLC,* Case No. 5:16-cv-00400-SVW-AS, *Nault v. DIRECTV, LLC,* Case No. 2:16-cv-05721-SVW-AS.

DEFENDANT DIRECTV, LLC'S OPPOSITION/CROSS-MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ............................................................................1

II.   BACKGROUND ..............................................................................1

    A.    DirecTV Contracts With Outside Installation Companies. ...................1

    B.    The Contracting Companies Fulfilled Their Contractual Obligations By Engaging Installation Technicians. ....................................................2

        1.    The Contracting Companies Engaged Plaintiffs As Independent Contractors. ...........................................................2

        2.    The Contracting Companies Set Plaintiffs' Pay. .........................3

        3.    The Contracting Companies Scheduled Plaintiffs For Installations. ..................................................................4

        4.    The Contracting Companies Were Responsible For Plaintiffs' Work. ...........................................................................4

    C.    Plaintiffs Were Free To Take On Other Work. ................................5

III.  LEGAL STANDARD ........................................................................5

IV.   ARGUMENT ...................................................................................6

    A.    Plaintiffs Conflate Two Distinct Tests. ...........................................8

    B.    Plaintiffs Were Genuine Independent Contractors. ............................8

    C.    In Any Event, DirecTV Was Not Plaintiffs' Joint Employer. .............12

        1.    DirecTV Did Not Have The Ability To Hire Or Fire Plaintiffs. 13

        2.    DirecTV Does Not Control The Work Conditions. ...................15

        3.    DirecTV Does Not Control The Rate Or Manner Of Pay. ........19

        4.    DirecTV Did Not Maintain Plaintiffs' Employment Records. ..20

        5.    Additional Factors Confirm No Joint Employment .................21

        6.    *Perez v. Lantern Light* is Distinguishable. .............................24

V.    CONCLUSION ...............................................................................25

DEFENDANT DIRECTV, LLC'S OPPOSITION/CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. FedEx Ground Package System, Inc.*,
   765 F.3d 981 (9th Cir. 2014) ................................................................. 9, 12

*Ali v. U.S.A. Cab Ltd.*,
   176 Cal. App. 4th 1333 (2009) ................................................................. 10

*Anderson v. DirecTV Inc.*,
   2017 WL 3382158 ...................................................................................... 7

*Arnold v. DirecTV, LLC*,
   2017 WL 1250975 (E.D. Mo. Mar. 31, 2017) ........................................... 7

*Arnold v. Mutual of Omaha Ins. Co.*,
   202 Cal. App. 4th 580 (2011) ............................................................ 11, 23

*Arredondo v. Delano Farms Co.*,
   922 F. Supp. 2d 1071 (E.D. Cal. 2013) .................................................. 19

*Bennett v. Unitek Global Servs., LLC*,
   2013 WL 4804841 (N.D. Ill. Sept. 9, 2013) .............................. 7, 9, 10, 24

*Bonnette v. Cal. Health & Welfare Agency*,
   704 F.2d 1465 (9th Cir. 1983) ................................................................ 12

*Bowerman v. Field Asset Servs., Inc.*,
   2017 WL 1036645 (N.D. Cal. Mar. 17, 2017) ........................................ 12

*Bradley v. Networkers Int'l, LLC*,
   211 Cal. App. 4th 1129 (2012) ................................................................. 8

*Carpenter v. DirecTV, LLC*,
   No. 14-cv-02854, Dkt. No. 146 (D. Colo. May 16, 2017) ........................ 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................. 5, 6

*Chao v. A-One Med. Servs., Inc.*,
   346 F.3d 908 (9th Cir. 2003) .................................................................. 21

*Chao v. Mid-Atlantic Installation Servs, Inc.*,
   16 F. App'x 104 (4th Cir. 2001) ............................................................. 7, 11

*Chao v. Westside Drywall, Inc.*,
   709 F. Supp. 2d 1037 (D. Or. 2010) ............................................................. 8

*Dalton v. Omnicare, Inc.*,
   138 F. Supp. 3d 709 (N.D. W.Va. 2015) ..................................................... 18

*Desimone v. Allstate Ins. Co.*,
   2000 WL 1811385 (N.D. Cal. Nov. 7, 2000) ............................................. 10

*Dianda v. PDEI, Inc.*,
   377 F. App'x 676 (9th Cir. 2010) ............................................................... 18

*Dole v. Amerilink Corp*,
   729 F. Supp. 73 (E.D. Mo. 1990) ............................................................... 10

*Donovan v. Sureway Cleaners*,
   656 F.2d 1368 (9th Cir. 1981) ...................................................................... 8

*Flores v. Velocity Express, LLC*,
   2017 WL 1436039 (N.D. Cal. Apr. 24, 2017) ............................................ 12

*Freund v. Hi-Tech Satellite, Inc.*,
   185 F. App'x 782 (11th Cir. 2006) (Unpub. Disp.) ................................. 7, 23

*Futrell v. Payday California, Inc.*,
   190 Cal. App. 4th 1419 (2010) ................................................................... 12

*Gonzales v. Sterling Builders, Inc.*,
   2010 WL 1875620 (D. Or. May 6, 2010) ..................................................... 6

*Gremillion v. Cox Commc'ns Louisiana*,
   2017 WL 1321318 (E.D. La. Apr. 3, 2017) ...........................................*passim*

*Herman v. Exp. Sixty-Minutes Delivery Serv., Inc.*,
   161 F.3d 299 (5th Cir. 1998) ...............................................................*passim*

*Jacobson v. Comcast Corp.*,
   740 F. Supp. 2d 683 (D. Md. 2010) ....................................... 7, 15, 20, 22

*Jean-Louis v. Metropolitan Cable Commc'ns, Inc.*,
   838 F. Supp. 2d 111 (S.D.N.Y. 2011) ................................. 7, 15, 17, 22

*Johnson v. Serenity Transportation, Inc.*,
    141 F. Supp. 3d 974 (N.D. Cal. 2015) ........................................................ 20

*Lara v. Workers' Comp. Appeals Bd.*,
    182 Cal. App. 4th 393 (2010) .................................................................... 10

*Lawrence v. Adderley Indus., Inc.*,
    2011 WL 666304 (E.D.N.Y. Feb. 11, 2011) ..................................... 7, 14, 21

*Martinez v. Combs*,
    49 Cal. 4th 35 (2010) ......................................................................... *passim*

*Millsap v. Fed. Express Corp.*,
    227 Cal. App. 3d 425 (1991) ....................................................................... 9

*Moba v. Total Transp. Svcs., Inc.*,
    16 F. Supp. 3d 1257 (W.D. Wash. 2014) ................................................... 23

*Montoya v. 3PD, Inc.*,
    2014 WL 3385116 (D. Ariz. Jul. 10, 2014) ............................................... 15

*Moreau v. Air France*,
    356 F.3d 942 (9th Cir. 2004) ............................................................. *passim*

*Narayan v. EGL, Inc.*,
    616 F.3d 895 (9th Cir. 2010) ................................................................ 11, 13

*Norberg v. Tillamook Cnty. Creamery Ass'n*,
    74 F. Supp. 2d 1002 (D. Or. 1999) .............................................................. 7

*Ochoa v. McDonald's Corp.*,
    133 F. Supp. 3d 1228 (N.D. Cal. 2015) ................................................ 15, 18

*Olmstead v. Home Depot U.S.A., Inc.*,
    2015 WL 1791440 (Cal. Ct. App. Apr. 17, 2015) (Unpub. Disp.) ........ 14, 17

*Patterson v. Domino's Pizza, LLC*,
    60 Cal. 4th 474 (2014) ......................................................................... 13, 19

*Perez v. Lantern Light Corp.*,
    2015 WL 3451268 (W.D. Wash. May 29, 2015) ................................... 24, 25

*Rios v. Airborne Express Inc.*,
    2006 WL 2067847 (N.D. Cal. Jul. 24, 2006) ......................... 12, 13, 16, 24

DEFENDANT DIRECTV, LLC'S OPPOSITION/CROSS-MOTION FOR SUMMARY JUDGMENT

*Roeder v. DirecTV, Inc.*,
   2017 WL 151401 (N.D. Iowa Jan. 13, 2017) ...............................................7

*Roslov v. DirecTV Inc.*,
   218 F. Supp. 3d 965 (E.D. Ark. 2016)..............................................*passim*

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947)...............................................................................23

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
   48 Cal. 3d 341 (1989) ......................................................................8, 11

*Santelices v. Cable Wiring*,
   147 F. Supp. 2d 1313 (S.D. Fla. 2001) ...........................................19, 25

*Scruggs v. Skylink Ltd.*,
   2011 WL 6026152 (S.D. W. Va. Dec. 2, 2011) ..............................*passim*

*Singh v. 7-Eleven, Inc.*,
   2007 WL 715488 (N.D. Cal. Mar. 8, 2007) ....................................14, 17

*Smilie v. Comcast Corp.*,
   2009 WL 9139890 (N.D. Ill. Feb. 25, 2009) ........................................17

*State Compensation Ins. Fund v. Brown*,
   32 Cal. App. 4th 188 (1995).....................................................9, 10, 11

*Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*,
   553 F.3d 559 (7th Cir. 2009) ..............................................................11

*Thornton v. Charter Commc'ns, LLC*,
   2014 WL 4794320 (E.D. Mo. Sept. 25, 2014) .........................6, 15, 16, 25

*Torres v. Air to Ground Servs., Inc.*,
   300 F.R.D. 386 (C.D. Cal. 2014)...........................................................20

*Torres-Lopez v. May*,
   111 F.3d 633 (9th Cir. 1997) .........................................................13, 21

*Valdez v. Cox Commc'ns Las Vegas, Inc.*,
   2012 WL 1203726 (D. Nev. Apr. 11, 2012).......................................*passim*

*Willis v. Enterprise Drilling Fluids, Inc.*,
   2016 WL 4494431 (E.D. Cal. Aug. 26, 2016)....................................13, 23

*Zampos v. W & E Commc'ns, Inc.*,
    970 F. Supp. 2d 794 (N.D. Ill. 2013)..................................................................*passim*

*Zhao v. Bebe Stores, Inc.*,
    247 F. Supp. 2d 1154 (C.D. Cal. 2003) ......................................................... 19

**Statutes**

Fair Labor Standards Act ..............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 56(a)........................................................................................5

## I.   <u>INTRODUCTION</u>

Plaintiffs were independent contractors who provided services to various installation companies ("Contracting Companies"), which, in turn, contracted with DirecTV to install DirecTV equipment.[2]  Plaintiffs sued DirecTV, but not the Contracting Companies, claiming that DirecTV actually employed them and violated the Fair Labor Standards Act ("FLSA") and various California employment laws. Plaintiffs have moved for partial summary judgment, arguing that DirecTV employed them (though they do not argue that DirecTV actually violated any employment laws or move for summary judgment on that basis).  But the undisputed facts show otherwise. In fact, all of Plaintiffs' claims fail because Plaintiffs were genuine independent contractors—not "employees"—and, in any event, certainly were not employed by *DirecTV*, which neither engaged them nor determined their pay or working conditions.

Plaintiffs' motion attempts to obscure this conclusion in two ways, but to no avail. First, Plaintiffs scarcely mention the Contracting Companies, apparently to create the impression that they do not exist, so as to create the appearance that the technicians must be controlled by DirecTV.  But, in fact, the Contracting Companies engaged Plaintiffs, set their pay, determined their schedules, and monitored their work.  Second, Plaintiffs not only ignore the true relationship among the parties, but they ignore the law as well.  As shown below, courts have consistently granted summary judgment to companies like DirecTV in cases involving remarkably similar facts.  Plaintiffs cannot wish away these decisions by disregarding them.  As shown below, this Court should follow these well-reasoned decisions and grant summary judgment to DirecTV.

## II.   <u>BACKGROUND</u>

### A.   **DirecTV Contracts With Outside Installation Companies.**

DirecTV offers satellite installation services to customers.  Statement of Uncontroverted Facts ("UF") 1.  When a customer orders satellite service, an

---

[2] The Contracting Companies at issue in these cases are listed in Appendix A along with the Plaintiff(s) they engaged.

installation technician must visit the customer's home to install the satellite equipment, activate the service, and educate the customer.  UF 2.  DirecTV maintains a workforce of technicians employed by DirecTV to perform installations and repairs.  UF 3.  To deal with fluctuations in customer demand, DirecTV also engages outside installation companies, including the Contracting Companies at issue here, to handle a portion of the installations in certain geographic areas.  UF 4.  The Contracting Companies are free-standing businesses that run their operations and dictate how they staff and pay their workers.  For example, they maintain their payroll and engage persons to oversee their businesses, and some invest in software to help run their operations.  UFs 5-6.

DirecTV and the Contracting Companies sign service provider agreements ("SPAs"), which govern the parties' relationships and impose certain requirements on how Contracting Companies complete the installations.  UF 7.  For example, the SPAs contain a "statement of work" that outlines the work that must be completed for an installation.  UF 8.  The SPAs also require that Contracting Companies ensure that their technicians be trained and certified to perform satellite installations.  UF 62.

**B.    The Contracting Companies Fulfilled Their Contractual Obligations By Engaging Installation Technicians.**

1.    The Contracting Companies Engaged Plaintiffs As Independent Contractors.

To complete the satellite installations they receive from DirecTV, the Contracting Companies engaged skilled technicians—like Plaintiffs—to install satellite equipment in customers' homes.  UF 9.  The Companies found these technicians by, for example, placing advertisement on career websites.  UF 10.  They then interviewed the technicians and discussed the terms of engagement.  UF 11.  DirecTV did not provide any direction to the Contracting Companies regarding who to hire, apart from requiring only that the technician obtain a satellite installation certification and pass a basic drug test and background check (which screens for criminal convictions to ensure customer safety).  UFs 12, 13.  These technicians did not sign any contracts with DirecTV.  UF 14.

Rather than hiring technicians as employees, the Contracting Companies generally engaged them as independent contractors.  UFs 9, 15.[3]  The number of independent contractor technicians varied among Contracting Companies, with some engaging more than 100 at multiple geographic sites.  UFs 18, 19.  The Contracting Companies provided their technicians with identification badges that stated the name, address, and telephone number of the Contracting Company and identified the technician as an authorized DirecTV installer.  UF 20.

As contractors, Plaintiffs were responsible for any business expenses they incurred related to their engagement, and they paid taxes as independent contractors. UFs 21, 22.  Plaintiffs also deducted up to tens of thousands of dollars in business expenses from their taxable income, including mileage and maintenance expenses; the price of their trucks; and the costs of work clothes, supplies, and equipment.  UF 23.

### 2.    The Contracting Companies Set Plaintiffs' Pay.

The Contracting Companies paid Plaintiffs.  UF 24.  Plaintiffs were paid by the job, meaning that their pay was based on the number and type of installations completed, regardless of the time spent working, although at least one Contracting Company allowed its technicians to determine whether they wished to be paid by the job or hourly.  UFs 25, 26.  Because Plaintiffs were paid by the job, they were incentivized to take on more jobs and work more efficiently.  UF 27.

The Contracting Companies, not DirecTV, had complete discretion to determine the rates that Plaintiffs were paid, and some companies engaged in rate negotiations with their technicians.  UFs 28, 29.  The rates varied by company and by technician, depending on factors such as experience and the location of an installation.  UFs 30, 31. Because their pay was set and issued by the Contracting Companies, Plaintiffs generally communicated with their Contracting Company alone about their compensation.  UF 33.

---

[3] At least one Contracting Companies gave technicians the choice to be hired as a W-2 employee or engaged as an independent contractor, and the technicians all elected to be engaged as independent contractors because they were able to earn more money than if they were hired as employees.  UFs 16, 17.

3.   The Contracting Companies Scheduled Plaintiffs For Installations.

Plaintiffs informed the Contracting Companies of their availability, and the companies assigned jobs accordingly and adjusted the schedule throughout the day if issues arose, such as customer cancellations.  UF 35.  Contracting Companies had discretion to assign jobs to the technician they preferred.  UFs 38, 39.  Indeed, Plaintiffs could request that their Contracting Companies change their schedule.  UF 34.[4]

4.   The Contracting Companies Were Responsible For Plaintiffs' Work.

As part of their contracts with DirecTV, the Contracting Companies were obligated to meet certain quality control standards.  UF 43.  Thus, the Contracting Companies implemented various quality control mechanisms regarding the work performed by Plaintiffs.  For example, Contracting Companies selected a percentage of completed installations to "quality check," which involved an inspection of the installation site.  UF 44.  The Contracting Companies had discretion regarding how to perform these checks, with one Contracting Company inspecting all of a newly-engaged technician's installations for the first few days and randomly selecting other installations to inspect.  *Id*.  The Contracting Companies also reviewed certain metrics provided by DirecTV to identify poorly-performing technicians and work with those technicians directly to improve their installations.  UFs 45, 46.

As another means of ensuring quality work, the Contracting Companies may impose "chargebacks" in some circumstances, for example, when a quality control check revealed that an installation was inadequate.  UF 47.  When a Contracting Company charged back a technician, it deducted a certain sum from the technician's pay.  *Id*.  The Contracting Companies had complete discretion whether to impose a chargeback and, if so, to determine the amount; DirecTV was not involved.  UFs 48, 49.

---

[4] For example, Nault often received calls from his Contracting Company asking him to pick up a job originally assigned to a different technician, and he occasionally called the Contracting Company to ask if somebody else could take his assigned jobs. UF 41.  Likewise, Kidd contacted his Contracting Company to request assignments in certain locations.  UF 42.

DEFENDANT DIRECTV, LLC'S OPPOSITION/CROSS-MOTION FOR SUMMARY JUDGMENT

### C.      Plaintiffs Were Free To Take On Other Work.

Although the Contracting Companies were subject to exclusivity agreements that prevented them from contracting with DirecTV's competitors, technicians like Plaintiffs were free to contract with other companies, including competitors of DirecTV, at the same time that they were engaged by the Contracting Companies.  UF 50.

For example, since 2014, Lasater has performed work for other satellite and internet companies, including Ayera Technologies (an internet service provider), ViaSat (a subcontractor installing Exede satellite), and HughesNet (a satellite internet provider), sometimes completing jobs on the same days that he performs DirecTV installations.  UFs 51, 52.  Notably, Lasater did not ask his Contracting Company or DirecTV for permission to take these additional jobs, as he did not feel it necessary.  UF 53.  Nor did he notify DirecTV about them.  *Id*.  In performing this work Lasater uses tools and equipment he purchased for completing DirecTV work.  UF 54.

Other Plaintiffs also engaged in similar work at the same time they installed DirecTV satellite for a Contracting Company.  Simultaneously with his work at the Contracting Company Satellite Services, Varas contracted with a company called Dish One, where he installed Dish Network satellite using the same tools he purchased for his work for his Contracting Company.  UF 55.  Likewise, when work at his Contracting Company CIG was slow, Kidd took on other work, such as installing televisions or cameras.  UF 56.  Guzik performed home theater installations for a company called Sky Media at the same time he performed DirecTV installation work.  UF 57.  And Trujeque performed telecommunications work throughout the time period he installed DirecTV satellite for the Contracting Company MPJ, often performing those installations in the evening after completing his work for MPJ.  UF 58.

## III.   LEGAL STANDARD

Summary judgment is required when the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The

1  moving party bears the initial burden of establishing the absence of a genuine issue of

2  material fact, which may be met by "'showing'—that is, pointing out to the district

3  court—that there is an absence of evidence to support the nonmoving party's case."

4  *Celotex*, 477 U.S. at 323-25.  Once the moving party has met its initial burden, the

5  nonmoving party must identify specific facts that show a genuine issue for trial.  *Id.*

6  **IV.  <u>ARGUMENT</u>**

7         Plaintiffs' claims are based on their alleged status as DirecTV employees.  They

8  fail for two distinct reasons.  First, Plaintiffs were genuine independent contractors and

9  thus not covered by the FLSA or California wage-and-hour laws.  Second, even if

10  Plaintiffs could establish that they were in fact employed by the Contracting Companies,

11  the undisputed facts preclude a finding that *DirecTV* jointly employed them as well.

12  *Gonzales v. Sterling Builders, Inc.*, 2010 WL 1875620, at *8 (D. Or. May 6, 2010)

13  ("Plaintiffs have, at best, provided evidence from which jurors could find Plaintiffs were

14  employees of some entity, but not that they were Defendants' employees.").

15         In determining whether DirecTV employed Plaintiffs, the Court should look to

16  the numerous recent decisions regarding whether satellite and cable companies employ

17  the technicians of outside installation companies.  Indeed, another federal court recently

18  held that, as a matter of law, DirecTV did not employ satellite technicians like Plaintiffs

19  who contracted with companies that install DirecTV.  *Roslov v. DirecTV Inc.*, 218 F.

20  Supp. 3d 965, 975 (E.D. Ark. 2016).  Many other courts have held in similar

21  circumstances that installation technicians like Plaintiffs are not employed by satellite or

22  cable companies like DirecTV.  *E.g.*, *Gremillion v. Cox Commc'ns Louisiana*, 2017 WL

23  1321318, at *7 (E.D. La. Apr. 3, 2017) (granting summary judgment to Cox, finding that

24  independent contractors engaged by contracting companies were not employed by Cox);

25  *Thornton v. Charter Commc'ns, LLC*, 2014 WL 4794320, at *15, 17 (E.D. Mo. Sept. 25,

26  2014) (granting summary judgment to Charter because it did not employ technicians

27  installing for a subcontractor); *Zampos v. W & E Commc'ns, Inc.*, 970 F. Supp. 2d 794,

28  806 (N.D. Ill. 2013) (granting summary judgment to Comcast because it lacked "control

over the working conditions of [the] technicians"); *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 677 (D. Md. 2000) (granting summary judgment to Comcast because technicians were genuine independent contractors and, even if not, they were not jointly employed by Comcast), *aff'd sub nom., Chao v. Mid-Atlantic Installation Servs, Inc.*, 16 F. App'x 104 (4th Cir. 2001).[5]

Plaintiffs simply ignore these decisions, focusing instead on irrelevant facts, such as the money DirecTV allegedly saved by engaging Contracting Companies. Mot. at 1, 17; *Norberg v. Tillamook Cnty. Creamery Ass'n*, 74 F. Supp. 2d 1002, 1008 (D. Or. 1999) (allegations of cost savings did not turn independent contractors into employees).[6] Moreover, Plaintiffs' proffered evidence largely consists of emails and other documents lacking any sort of testimonial explanation, accompanied only by Plaintiffs' argument as to what those documents mean. *See generally* DirecTV's Objections to Plaintiffs' Evidence (filed concurrently). Rather than be swayed by these irrelevant arguments and this inadmissible evidence, the Court should follow the many decisions on point and grant summary judgment for DirecTV.

---

[5] *See also Bennett v. Unitek Global Servs., LLC*, 2013 WL 4804841, at *11 (N.D. Ill. Sept. 9, 2013); *Valdez v. Cox Commc'ns Las Vegas, Inc.*, 2012 WL 1203726 (D. Nev. Apr. 11, 2012); *Jean-Louis v. Metropolitan Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 125 (S.D.N.Y. 2011); *Lawrence v. Adderley Indus., Inc.*, 2011 WL 666304, at *11 (E.D.N.Y. Feb. 11, 2011); *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 692-93 (D. Md. 2010); *Scruggs v. Skylink Ltd.*, 2011 WL 6026152, at *8 (S.D. W. Va. Dec. 2, 2011); *Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 784 (11th Cir. 2006) (Unpub. Disp.).

[6] In arguing that DirecTV employed Plaintiffs as a matter of law, Plaintiffs also ignore several decisions involving DirecTV in which the Court found a factual dispute as to whether DirecTV employed contractor technicians. *Roeder v. DirecTV, Inc.*, 2017 WL 151401, at *25 (N.D. Iowa Jan. 13, 2017); *Arnold v. DirecTV, LLC*, 2017 WL 1250975, at *10 (E.D. Mo. Mar. 31, 2017). These cases do not change the outcome here. The *Roeder* court did not consider the issue of joint employment (*Roeder*, 2017 WL 1250975, at *25-26), while *Arnold* concerned W-2 employee technicians who worked for Home Service Providers, which Plaintiffs admit are different from the Contracting Companies at issue here. *See* Plaintiffs' Separate Statement of Uncontroverted Facts Nos. 11-13. Moreover, although two district courts recently found an issue of fact as to whether DirecTV employed technicians engaged by Contracting Companies (*Carpenter v. DirecTV, LLC*, No. 14-cv-02854, Dkt. No. 146, at *10-11 (D. Colo. May 16, 2017) and *Anderson v. DirecTV Inc.*, 2017 WL 3382158, at *7), the facts here establish that Plaintiffs were not DirecTV's employees, for the reasons explained below.

---

## A.   Plaintiffs Conflate Two Distinct Tests.

In arguing that DirecTV was their employer, Plaintiffs conflate two distinct tests: (1) one governing whether a worker is an independent contractor or an employee; and (2) another governing whether, *if a worker is an employee*, he is jointly employed by a particular entity (in this case, DirecTV). *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1061 (D. Or. 2010) (describing and applying both tests). Although, as discussed below, there is some overlap between the two tests, they are distinct, and a finding for DirecTV under *either test* warrants summary judgment in its favor: "[T]wo things are true: if defendants are not a joint employer, then they are not an employer at all; also, if the claimants are independent contractors, then they are not Defendants' employees." *Id.*; *see also Roslov*, 218 F. Supp. 3d at 973-75 (describing both tests and finding that DirecTV was entitled to summary judgment under either).[7]

## B.   Plaintiffs Were Genuine Independent Contractors.

DirecTV is entitled to summary judgment because Plaintiffs were independent contractors, not employees, of the Contracting Companies. "Because [the Contracting Companies] cannot be considered [Plaintiffs'] employer, neither can [DirecTV], whose only relationship with them is via its contract with [the Contracting Companies]." *Herman*, 164 F. Supp. 2d at 677.

To determine if a worker is an employee or independent contractor, courts applying the FLSA and California law consider: (1) the degree of control exerted by the alleged employer; (2) the worker's opportunity for profit and loss; (3) the worker's investment in the business; (4) the permanence of the relationship; (5) the skill required; and (6) the extent to which the work is an integral part of the alleged employer's business. *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981); *Bradley v. Networkers Int'l, LLC*, 211 Cal. App. 4th 1129, 1145-47 (2012); *see also S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 355 (1989) (noting that independent contractor test under California law borrows from FLSA).

----

[7] Likewise, a fact dispute under either test requires denial of Plaintiffs' motion.

These factors compel the conclusion that no employment relationship exists in this case. *Scruggs*, 2011 WL 6026152, at *8 (satellite installation technicians were genuine independent contractors); *Herman*, 164 F. Supp. 2d at 677 (cable technicians were independent contractors under similar facts); *Bennett v. Unitek Global Servs., LLC*, 2013 WL 4804841, at *11 (N.D. Ill. Sept. 9, 2013) (same as to satellite technicians).

First, the Contracting Companies' control over Plaintiffs was far less than that of an employer. Notably, Plaintiffs were free to perform similar work for other companies, which some Plaintiffs took full advantage of.[8] UFs 50-58. *Bennett*, 2013 WL 4804841, at *7. That the Companies could end their relationship with Plaintiffs at any time does not establish the "control" of an employer; this is true of many independent contractor relationships. *Millsap v. Fed. Express Corp.*, 227 Cal. App. 3d 425, 431 n.3 (1991).

Moreover, as explained by the Contracting Companies' principals, Plaintiffs did not have permanent schedules and were free to accept or reject jobs. UFs 39-40 (if an Empire technician declines a job, it stays in the "pool" until it is picked up by another Empire technician); *id.* (CIG technicians could decline jobs). *See State Compensation Ins. Fund v. Brown*, 32 Cal. App. 4th 188, 202-03 (1995) (truck drivers were independent contractors when they could accept or reject jobs). For example, when Lasater was assigned too much work, he rejected it. UF 59. Nault enjoyed certain other freedoms including, for example, reporting to the warehouse only once a week, and he concedes that he was "pretty much sent to be on [his] own." UFs 60, 82, 83. These facts easily distinguish *Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir. 2014), where FedEx "structure[d] drivers' workloads so that they ha[d] to work 9.5 to 11 hours every working day" and "adjust[ed] drivers' workloads to ensure that they never ha[d] more or less work than can be done in 9.5 to 11 hours." *Id.* at 990.

Second, Plaintiffs controlled their opportunity for profit or loss by taking more installation jobs, working more efficiently, and limiting their expenses, as some

---

[8] The fact that some Plaintiffs did not engage in other work is immaterial; what matters is that they had the ability to do so. *Bennett*, 2013 WL 4804841, at *7.

1  Plaintiffs themselves admit.  UF 27.  *Dole v. Amerilink Corp*, 729 F. Supp. 73, 76-77

2  (E.D. Mo. 1990); *Bennett*, 2013 WL 4804841, at *8.

3        Third, Plaintiffs invested significant capital in their business through the purchase

4  of expensive equipment, which they deducted from their income.  UFs 21, 23.  The fact

5  that all of the equipment used for installations (besides DirecTV's proprietary dishes

6  and boxes) was provided by Plaintiffs evinces independent contractor status.  *Lara v.*

7  *Workers' Comp. Appeals Bd.*, 182 Cal. App. 4th 393, 400 (2010) (no employment

8  relationship where worker provided equipment); *Desimone v. Allstate Ins. Co.*, 2000 WL

9  1811385, at *14 (N.D. Cal. Nov. 7, 2000) (that plaintiffs "incur their own expenses . . .

10  without any reimbursement from Defendant weighs in favor of independent contractor

11  status under [California law]"); *Brown*, 32 Cal. App. 4th at 202-03; *Ali v. U.S.A. Cab*

12  *Ltd.*, 176 Cal. App. 4th 1333, 1349 (2009).  Moreover, Plaintiffs used this equipment

13  when they performed work for different installation companies.  UFs 54, 55.

14        Fourth, Plaintiffs' work required skill, certification, and training, as they

15  themselves admit in a different section of their brief.  Mot. at 9.  Indeed, Plaintiffs had to

16  train and become certified before installing, unless they already had experience as

17  installation technicians.  UF 61, 62.  Plaintiffs argue that their work did not require skill

18  or expertise because "Plaintiffs were not acting as engineers, architects, or any other

19  particular profession."  Mot. at 13.  But their view of this factor is far too narrow.  *See*

20  *Brown*, 32 Cal. App. 4th at 202-03 (truck drivers were independent contractors in part

21  because truck driving—"while perhaps not a skilled craft—requires abilities beyond

22  those possessed by a general laborer").  Specifically, installing satellite is similar to the

23  work of a carpenter or electrician, which requires skill.  *Herman*, 164 F. Supp. 2d at 675.

24        Fifth, Plaintiffs' relationship with the Contracting Companies cannot be deemed

25  "permanent" because Plaintiffs could—and in some cases did—contract with other

26  companies to perform similar work.  *Bennett*, 2013 WL 4804841, at *10 (lack of

27  exclusivity suggested contractor status); *Herman*, 164 F. Supp. 2d at 675-76 (same).

28  Some Plaintiffs also moved between Contracting Companies.  *See* Appendix A.

Finally, although the work of contract technicians may be integral to the Contracting Companies' business, "this factor, standing alone, does not create an employment relationship." *Chao v. Mid-Atl.*, 16 F. App'x at 107.

Significantly, Plaintiffs fully understood that they were entering into a contractor relationship. Prior to beginning work for the Contracting Company, several Plaintiffs signed agreements expressly stating as much. UF 63. Some Plaintiffs also admit that they were aware of their independent contractor status from the outset. UF 64. And all Plaintiffs received a 1099 tax form and filed their taxes as independent contractors, deducting their expenses. UFs 15, 22. These facts confirm the absence of any employment relationship. *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010) (whether "'the parties believe they are creating the relationship of employer-employee'" is indicative of employment status) (quoting *Borello*, 48 Cal. 3d at 351); *Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*, 553 F.3d 559, 569 (7th Cir. 2009) (plaintiff was independent contractor in part because of his assertions to that effect on his tax returns); *Arnold v. Mutual of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 589-90 (2011); *Brown*, 32 Cal. App. 4th at 203.

Applying these factors, the *Roslov* court recently held that technicians installing DirecTV—like Plaintiffs—were independent contractors as a matter of law. *Roslov*, 218 F. Supp. 3d at 977; *see Scruggs*, 2011 WL 6026152, at *8 (technicians were genuine independent contractors of DirecTV subcontractor). This conclusion is equally true here. Because Plaintiffs are genuine independent contractors, their claims fail.[9]

---

[9] *Borello*, the case on which Plaintiffs predominantly rely, is obviously distinguishable. Unlike Plaintiffs, who are skilled satellite technicians who travel to customers' homes to install equipment, *Borello* concerned migrant "share farmers" who harvested cucumbers for a crop grower on land owned by the grower. 48 Cal. 3d at 346. The *Borello* Court relied heavily on the fact that the share farmers "made no capital investment beyond simple hand tools," "performed manual labor requiring no special skill," and were "dependent for subsistence on whatever farm work they could obtain." *Id.* at 355. Here, by contrast, Plaintiffs invested thousands of dollars, needed to be trained and certified as satellite technicians, and could obtain other work simultaneously.

### C.   In Any Event, DirecTV Was Not Plaintiffs' Joint Employer.

Plaintiffs' claims also fail because, even if there were a triable issue of fact regarding whether Plaintiffs were employees of the Contracting Companies, under no circumstances were they jointly employed by DirecTV.  In determining whether a joint employment relationship exists under federal law, the key factors ("regulatory factors") are whether the putative joint employer: (1) has the ability to hire and fire the worker; (2) has the authority to supervise and control the work conditions; (3) has the authority to determine the rate and method of payment; and (4) maintains employment records. *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983); *Rios v. Airborne Express Inc.*, 2006 WL 2067847, at *2-3 (N.D. Cal. Jul. 24, 2006).  California law considers similar factors.  *Martinez v. Combs*, 49 Cal. 4th 35, 68 (2010); *Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1435 (2010) ("Although the FLSA applies a slightly different test than California law, the predominant factor remains the control an alleged employer exercises over an employee.").

These factors show that DirecTV is not Plaintiffs' employer as a matter of law.  As one district court recently noted, "[t]he law governing joint employer status is well developed in th[e] [cable and satellite] industry" and overwhelmingly supports the conclusion that DirecTV did not jointly employ Plaintiffs.  *Gremillion*, 2017 WL 1321318, at *7.  Likewise, applying California law, the California Supreme Court—in a case Plaintiffs cite—held under similar facts that workers of an independent company that contracted with the defendant were not employed by the defendant as a matter of law.  *Martinez*, 49 Cal. 4th at 68.  The Court should follow these cases.[10]

---

[10] Because the joint employment inquiry is distinct from the independent contractor inquiry, some of Plaintiffs' cited cases are simply irrelevant to the joint employment analysis.  For example, in *Flores v. Velocity Express, LLC*, 2017 WL 1436039, at *1-2 (N.D. Cal. Apr. 24, 2017), *Bowerman v. Field Asset Servs., Inc.*, 2017 WL 1036645, at *25 (N.D. Cal. Mar. 17, 2017), and *Alexander*, 765 F.3d at 988, the courts considered whether the defendant was the employer of the worker it *directly engaged as an independent contractor*, and did so by analyzing the independent contractor agreement entered into between the worker and defendant.  Here, it is undisputed that no written contract existed between Plaintiffs and DirecTV.  UF 14.  These cases therefore shed no light on whether DirecTV employed Plaintiffs.

As an initial matter, Plaintiffs are wrong in asserting that DirecTV bears the burden of proving that it did not jointly employ Plaintiffs under California law.[11] Burden-shifting applies only under the independent contractor test—not under the joint employment test. In a typical independent contractor case, it is undisputed that the plaintiff provides services to the defendant, so the only issue is the nature of the relationship. *E.g.*, *Narayan*, 616 F.3d at 900. By contrast, in this case, the principal question is whether DirecTV, rather than the Contracting Company, is the joint employer of Plaintiffs. Because this question is in dispute, Plaintiffs retain the burden of proving by a preponderance of the evidence that DirecTV jointly employed them. *Rios*, 2006 WL 2067847, at *2 (under both the FLSA and California law, Plaintiff "bears the ultimate burden of persuasion" to establish existence of joint employment relationship); *Martinez*, 49 Cal.4th at 287 (defendant was entitled to summary judgment on joint employment grounds because *plaintiffs'* evidence was not *"sufficient to prove the existence of an employment relationship…"*) (emphasis added).

### 1.   DirecTV Did Not Have The Ability To Hire Or Fire Plaintiffs.

In applying to work with their Contracting Companies, Plaintiffs had no contact with DirecTV. UF 11. The Contracting Companies advertised positions and conducted interviews for technicians as they saw fit, and Plaintiffs obtained their work by contacting the Contracting Companies directly. UF 10. These facts clearly weigh against a finding of joint employment. *Roslov*, 218 F. Supp. 3d at 975 (installation technician was not employed by DirecTV when he "responded to an advertisement and met with [Contracting Company] representatives" only); *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 501 (2014) (no joint employment when direct employer "did not include [the putative joint employer] in the application, interview, or hiring process"); *Willis v. Enterprise Drilling Fluids, Inc.*, 2016 WL 4494431, at *6 (E.D. Cal. Aug. 26, 2016) (no joint employment under FLSA or California law when alleged joint employer "didn't have any involvement" in hiring). These facts also distinguish *Torres-Lopez v.*

---

[11] Plaintiffs concede that no burden shifting occurs under the FLSA.

*May*, 111 F.3d 633, 637 (9th Cir. 1997), where the outside company "did not actually recruit farmworkers," but rather the workers showed up at the defendant's worksite, where the outside company then "ch[ose] farmworkers from this group."

Nevertheless, Plaintiffs contend that DirecTV "permitted" or "suffered" Plaintiffs to work for DirecTV because a technician could not perform installations without obtaining "approval" from DirecTV. Mot. at 4. But the Contracting Companies retained discretion to engage the technicians they choose. UFs 12, 13. It is true that, before DirecTV created a technician identification number for an individual, the technician needed to pass a criminal background check and a drug test. But these baseline requirements were merely quality controls to ensure the safety of DirecTV customers and do not reflect the power to "hire." *Gremillion*, 2017 WL 1321318, at *5 (Cox's requirements that installation company's technicians be qualified and pass a background check "amount to minimal quality controls and safety measures [and] do not indicate that Cox dictates which applicants are hired or how many"); *Singh v. 7-Eleven, Inc.*, 2007 WL 715488, at *4, 6 (N.D. Cal. Mar. 8, 2007) (under California law, fact that franchisor set baseline requirements for franchisee's employees did not mean franchisor was joint employer).[12] Similarly, the requirement that the technicians obtain a certificate showing they completed basic satellite installation training does not constitute the power to hire. UF 62.

DirecTV also lacked the power to fire Plaintiffs. That DirecTV could withdraw work from the *Contracting Company* does not mean that it had the power to "fire" *technicians*. In many business relationships, a large customer can indirectly influence the workers of another company by withdrawing business, but such indirect influence does not evince joint employment. *Martinez*, 49 Cal. 4th at 70 (fact that purchaser

---

[12] *See also Lawrence v. Adderley Indus., Inc.*, 2011 WL 666304, at *8 (E.D.N.Y. Feb. 11, 2011) ("Cablevision's drug testing and background-check policy . . . does not indicate an employee/employer relationship."); *Olmstead v. Home Depot U.S.A., Inc.*, 2015 WL 1791440, at *6 (Cal. Ct. App. Apr. 17, 2015) (Unpub. Disp.) ("Home Depot's rights to compel a [subcontractor's] employee to pass a background check, wear a proper badge evidencing that he did, be groomed, and be on time . . . are not indicia of a joint employer relationship.").

could influence seller's business "does not transform the purchaser into the employer of the supplier's workforce"); *Gremillion*, 2017 WL 1321318, at *6 (that cable provider could withdraw work did not make it joint employer of installation company's technicians).  For example, courts in this Circuit resist finding joint employment in the franchise context, even though large franchises can exert great pressure on franchisees. *See Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1236 (N.D. Cal. 2015).

Nor does the ability to prevent a technician from performing DirecTV installations—the ability to "deactivate" a technician's identification number—constitute the power to "fire." *E.g.*, *Thornton*, 2014 WL 4794320, at *13-14; *Jean-Louis*, 838 F. Supp. 2d at 125; *Zampos*, 970 F. Supp. 2d at 803.[13]  In the rare instance when DirecTV deactivated a technician's ID number, he could still perform non-installation work for the Contracting Company.  UF 66.  *Gremillion*, 2017 WL 1321318, at *5 ("A technician de-authorized by Cox could be employed by [the installation company] elsewhere or could perform duties that do not require entry into customers' homes"); *Montoya v. 3PD, Inc.*, 2014 WL 3385116, at *4 (D. Ariz. Jul. 10, 2014) ("Although Home Depot may have requested that [its contractor] remove Montoya as a delivery driver of Home Depot goods, it remained [the contractor's] decision whether to continue its relationship with Montoya.").  Indeed, when DirecTV deactivated Trujeque's ID number after he defrauded DirecTV, his Contracting Company offered to keep him on in a different role.  UF 67.

For all these reasons, DirecTV does not have the power to hire or fire Plaintiffs.

## 2.   DirecTV Does Not Control The Work Conditions.

As shown below, Plaintiffs' work-related contact was with the owners, supervisors, and technicians of the Contracting Companies, and generally not with DirecTV.   The lack of day-to-day control confirms that DirecTV was not a joint employer.  *Jacobson*, 740 F. Supp. 2d at 691 (Comcast was not employer when it was

---

[13] DirecTV generally deactivated technicians only for "exceptional" reasons, such as when unlawful activities were involved.  UF 65.

1  not responsible for the day-to-day management of the technicians"); *Martinez*, 49 Cal.

2  4th at 72; *Rios*, 2006 WL 2067847, at *2-3.[14]

3      For example, Plaintiffs were scheduled by their Contracting Companies, not

4  DirecTV.  DirecTV used software called SIEBEL to schedule work orders for

5  customers.  UF 36.  When a sale of a DirecTV system occurred, a work order was

6  created in SIEBEL.  *Id*.  Batches of work orders are then provided to a Contracting

7  Company for them to allocate to their technicians as they saw fit.  UF 37.  Although

8  DirecTV's software "soft assigned" work orders to technicians' identification numbers

9  when DirecTV provided the orders to the Contracting Companies in order to optimize

10  the assignments, Contracting Companies had complete discretion to—and routinely

11  did—reassign work orders to technicians based on skill set, location, and technicians'

12  preferences.  UF 38.  Thus, the owners of various Contracting Companies testified that,

13  despite the initial "assignment," their companies retained discretion to reassign the jobs

14  without input from DirecTV.[15]  UF 38, 39.  In *Gremillion*, an identical scheduling

15  system did not suggest a joint employment relationship.  2017 WL 1321318, at *6; *see*

16  *also Moreau v. Air France*, 356 F.3d 942, 950 n.5 (9th Cir. 2004).

17      Plaintiffs also mistakenly focus on DirecTV's standards and policies regarding

18  the installation of its products and the appearance of technicians.  Mot. at 9-10.  These

19  standards concern *quality control*, not control over the technicians.  DirecTV may take

20  steps to ensure that a contractual partner performs adequately with respect to customer

21  safety and satisfaction without evincing joint employment.  *Thornton*, 2014 WL

22  4794320, at *15 ("[R]equiring that [installation company's] technicians follow Charter

---

[14] In arguing that DirecTV controlled them, Plaintiffs miss the mark in at least two fundamental ways.  First, Plaintiffs argue that contractor technicians "did the same work as" DirecTV employee technicians.  Mot. at 16; *see also id.* at 9.  But what matters is the *control* that DirecTV exerted over them, not whether their work was similar to that of other workers.  *Roslov*, 218 F. Supp. 3d at 975.  Second, Plaintiffs assert that DirecTV exerted "control over its operations" and then list operational controls unrelated to Plaintiffs' work, such as negotiating content with suppliers, building a brand name, and launching satellites into space.  Mot. at 8-9.  Plaintiffs fail to explain how DirecTV's control over these aspects of its business has any impact on their claims.

[15] Therefore, Plaintiffs communicated with the Contracting Company if they needed to call out sick, take time off, or request a particular schedule or shift.  UF 34.

technical specifications when installing Charter equipment [is] typical in a contractor relationship and do[es] not establish joint employment"); *Scruggs*, 2011 WL 6026152, at *5 (requiring compliance with DirecTV's specifications was "entirely consistent with independent contractor status."); *Zampos*, 970 F. Supp. 2d at 799 (Comcast was not joint employer despite requiring installation company's technicians to meet "Comcast specifications, minimum standards, and expectations"); *Smilie v. Comcast Corp.*, 2009 WL 9139890, at *4 (N.D. Ill. Feb. 25, 2009) ("Comcast's requiring Frontline (and its contract technicians) to meet Comcast's quality standards is not an indication of control."); *Jean-Louis*, 838 F. Supp. 2d at 127-28 (Time Warner's sending "Tech Tips" to contracting company did not suggest joint employment); *Singh*, 2007 WL 715488, at *5 (franchisor did not employ franchisee's employees despite requiring uniforms because "[s]uch policies are merely reflective of an inherent interrelation of operations between the two entities and 7-Eleven's goal of attaining conformity to certain operational standards and details"); *Olmstead*, 2015 WL 1791440, at *6.

The Ninth Circuit's decision in *Moreau* illustrates this point. The Court considered whether an airline that contracted out certain services including baggage and cargo handling jointly employed the contractor's employees. 356 F.3d at 951. The Court noted that Air France was "very specific about how it wanted its work performed, and it checked to ensure that its standards were met and that the [contractor's] overall performance adhered to Air France's specifications." *Id*. The Ninth Circuit nonetheless concluded that the subcontractor's employees were not jointly employed by Air France:

> [M]uch of the indirect supervision or control exercised by Air France over the ground handling employees was purportedly to ensure compliance with various safety and security regulations . . . . Any airline that is concerned about its passengers' safety would be remiss to simply delegate a task to another party and not double-check to verify that the task was done properly.

*Id*. Likewise, any indirect "control" that DirecTV allegedly exerts over Plaintiffs as a result of its contract with the Contracting Companies is immaterial.

Plaintiffs also ignore that the Contracting Companies, not DirecTV, monitor Plaintiffs' performance. While DirecTV used various methods to hold the *Contracting Companies* accountable under the SPAs, the Contracting Companies adopted their own strategies to improve technicians' performance. UF 46. Thus, CIG contacted low-performing technicians by phone or email and instructed them to work with CIG supervisors, while MPJ communicated with low-performers in person during meetings. UFs 68, 69. And Satek's principal testified that if technicians continually under-performed, Satek would assign him fewer routes. UF 70. Contracting Companies also selected certain installations to inspect and retained discretion to impose chargebacks on Plaintiffs if an installation failed to meet the Contracting Company's requirements. UFs 44, 47.[16] Indeed, Plaintiffs acknowledge that they generally discussed their performance with their Contracting Companies, not with DirecTV. UF 72.[17]

These facts confirm the absence of any employment relationship between Plaintiffs and DirecTV. *Ochoa*, 133 F. Supp. 3d at 1237-38 (franchisor monitored customer service metrics but disciplinary authority was retained by franchisee); *Zampos*, 970 F. Supp. 2d at 804 (cable company forwarded performance metrics to subcontractor, which would determine corrective action, if any); *Dalton v. Omnicare, Inc.*, 138 F. Supp. 3d 709, 718 (N.D. W.Va. 2015) (no joint employment when alleged joint employer communicated customer complaints to direct employer, notwithstanding plaintiff's claim that there was an "expectation" that direct employer would fire worker responsible); *see also Dianda v. PDEI, Inc.*, 377 F. App'x 676, 677-78 (9th Cir. 2010)

---

[16] While DirecTV gathered data on technicians' performance for the purposes of providing feedback at a company level to the Contracting Companies, it relayed that information to the Contracting Companies, which determined whether to take any action.   UFs 45, 46.

[17] For example, Lasater "never personally had any one-on-one meetings or phone discussions with anyone at DirecTV regarding [his] performance" and never received emails from DirecTV regarding the same. UF 72. Nault likewise never "ha[d] any meetings with anyone at DirecTV regarding [his] performance at Satellite Services," nor did he have any phone calls or email communications with DirecTV about his performance. *Id.*

(no joint employment under FLSA or California law where plaintiff "never took instructions or directions from" the alleged joint employer).[18]

In sum, to the extent that Plaintiffs' work conditions were controlled at all, it was the Contracting Companies that did so. DirecTV's supervision over Plaintiffs was negligible, and any "control" is recognized by the law as necessary to ensure the quality of the product it provides to customers and therefore is not indicative of an employment relationship. Indeed, courts have granted summary judgment to alleged joint employers on records suggesting far more control than here. *E.g.*, *Patterson*, 60 Cal. 4th at 502-03 (no joint employment under California law even though putative joint employer told direct employer that he "should get rid of" plaintiff); *Valdez*, 2012 WL 1203726, at *3 (Cox Communication did not jointly employ technicians even though Cox supervisor met with technicians four times a week and identified which ones were not performing well); *Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1160 (C.D. Cal. 2003) (no joint employment even though alleged joint employer hired a manager to maintain an office at subcontractor's premises "to deal with quality control problems").

### 3. DirecTV Does Not Control The Rate Or Manner Of Pay.

Plaintiffs were paid by their Contracting Companies, at rates set by the Contracting Companies, without approval or input from DirecTV. UFs 24, 28. Indeed, the SPAs said nothing about how–or how much–technicians like Plaintiffs were to be paid. UFs 28-32. *Martinez*, 49 Cal. 4th at 72 (no joint employment relationship when direct employer alone determined rate and manner of pay); *compare Arredondo v. Delano Farms Co.*, 922 F. Supp. 2d 1071, 1088 (E.D. Cal. 2013) (joint employment when alleged joint employer and contractor "expressly negotiated" workers' pay).

---

[18] The fact that DirecTV supervisors occasionally observed Plaintiffs performing installations for quality control purposes is immaterial. UFs 73-76 (several plaintiffs conceded that DirectTV performed control checks infrequently, that DirecTV did not supervise installations, and/or that they could recall DirecTV personnel only by first name); *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1326-28 (S.D. Fla. 2001) (cable company was not joint employer despite quality control checks where plaintiff "could not recall" name of supervisor performing checks and there was no evidence of "substantial control and supervision").

Because DirecTV paid the installation company for completed work orders, the amounts DirecTV paid the companies may influence what the companies paid technicians.  But this does not suggest joint employment.  *Roslov*, 218 F. Supp. 3d at 974 (noting that "this is no different than any other contractor relationship").  Moreover, Plaintiffs are simply wrong in contending that DirecTV "capped" their pay.  Owners of Contracting Companies testified without contradiction that they paid technicians before receiving payment from DirecTV, that they sometimes paid them *higher* rates than the Companies received from DirecTV for the completion of the work orders, and that they paid technicians at various frequencies (e.g., weekly, bi-monthly).  UFs 77, 78.

Plaintiffs provide no support for their theory that, by paying the Contracting Companies, DirecTV "paid" Plaintiffs.  In *Johnson v. Serenity Transportation, Inc.*, 141 F. Supp. 3d 974 (N.D. Cal. 2015), the court rejected this theory under the FLSA and California law.  There, although the direct employer calculated the plaintiffs' pay as a "percentage of the fees" that the putative joint employer paid the direct employer, the court reasoned that "[w]hile this makes clear that the [putative joint employer's] initial fee contributes to the ultimate determination of how much drivers receive, [the direct employer] alone is alleged to have responsibility for determining the rate at which drivers were ultimately paid."  *Id.* at 998; *see also Martinez*, 49 Cal.4th at 70 (calling this view "unreasonably broad" and noting that "the concept of downstream benefit as a sufficient basis for liability appears nowhere in [California's] definition of 'employ'"); *Torres v. Air to Ground Servs., Inc.*, 300 F.R.D. 386, 395-96 (C.D. Cal. 2014).

4.   DirecTV Did Not Maintain Plaintiffs' Employment Records.

Plaintiffs were not on DirecTV's payroll, and DirecTV did not provide Plaintiffs with tax forms.  UFs 15, 79.  While DirecTV may have had access to certain records regarding Plaintiffs' criminal background check, certification, and training, those records were for identification and quality control purposes and were not "employment" records.  *Roslov*, 218 F. Supp. 3d at 974; *Jacobson*, 740 F. Supp. 2d at 692.  And, while DirecTV maintained records through its SIEBEL system regarding jobs completed by

1    technicians, these records simply ensured that installations are completed.  UFs 36, 80.

2    DirecTV does not maintain any of the types of records that courts have traditionally

3    considered employment records (such as applications, pay data, or disciplinary data).

4              5.    <u>Additional Factors Confirm No Joint Employment.</u>

5          Courts analyze additional "non-regulatory" factors when those factors are

6    applicable to the joint employment analysis.[19]  *See Moreau*, 356 F.3d at 947-48; *Torres-*

7    *Lopez v. May*, 111 F.3d 633, 640 (9th Cir. 1997).  The Ninth Circuit has suggested that

8    these additional factors apply predominantly in situations in which the worker is *directly*

9    *employed* by the intermediary company.  *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908,

10   917 (9th Cir. 2003) (eight-factor test "applies only to circumstances in which a company

11   has contracted for workers who are directly employed by an intermediary company").

12   Here, where Plaintiffs independently contracted with Contracting Companies, the four

13   regulatory factors, discussed above, should control.  Nonetheless, the non-regulatory

14   factors further confirm that DirecTV did not jointly employ Plaintiffs.

15              a)    Economic Independence

16         Several of the non-regulatory factors—numbers 2, 4, and 7—concern whether the

17   worker was economically dependent on the alleged joint employer.  For the reasons

18   explained below, these factors favor a finding of no joint employment here.

19         The fourth factor weighs against joint employment because Plaintiffs were not

20   required to exclusively install DirecTV and thus could "shift . . . from one [job] to

21   another."  UF 50.  *Moreau*, 356 F.3d at 948; *Lawrence*, 2011 WL 666304, at *10 (no

22

23

24   ───────────────
     [19] The non-regulatory factors consider whether: (1) the work was a specialty job
25   on the production line; (2) the responsibility under the contract could be passed from
     one contractor to another without material change and little negotiation; (3) the
26   purported joint employer owns or has an interest in the premises and equipment used for
     the work; (4) the employees have a business organization that could shift as a unit from
27   one worksite to another; (5) the services rendered were piecework and did not require
     special skill, initiative or foresight; (6) the employee had an opportunity for profit or
28   loss depending upon the employee's managerial skill; (7) there was permanence in the
     working relationship and (8) the service rendered was an integral part of the alleged
     joint employer's business.  *Moreau*, 356 F.3d at 947-48.

joint employment when cable installers could shift "from Cablevision to another cable media provider"); *Martinez*, 49 Cal. 4th at 72.

Factor two also points against joint employment. "'This factor weighs in favor of a determination of joint employment when employees are tied to [the alleged joint employer] rather than to an ostensible direct employer.'" *Jean-Louis*, 838 F. Supp. 2d at 134 (quoting *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d. Cir. 2003)). But "where 'employees work for an entity (the purported joint employer) only to the extent that their direct employer is hired by that entity, this factor does not in any way support the determination that a joint employment relationship exists.'" *Id*. Plaintiffs "worked for" DirecTV only to the extent that their installation company contracted with DirecTV. Thus, when they stopped working with one Contracting Company and sought work with another, Plaintiffs affirmatively contacted the company to seek a new engagement, despite previously installing DirecTV satellite. UFs 11, 81. "[W]hen an Installation Company dissolves, technicians wishing to continue working on behalf of Comcast are required to apply and be hired for a position from another Installation Company. . . . This weighs against a joint employer relationship." *Jacobson*, 740 F. Supp. 2d at 693.

Factor seven (whether the relationship with DirecTV is permanent) further confirms that Plaintiffs were not economically dependent on DirecTV, because Plaintiffs were not required to exclusively install DirecTV. *See Roslov*, 218 F. Supp. 3d at 977 (no permanence because Plaintiff was free to pursue similar work); *Herman v. Exp. Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305 (5th Cir. 1998).

     b) Plaintiffs' Ability to Control Profit and Loss

Non-regulatory factors 3, 5, and 6 concern a worker's ability to control profits and losses through, among other things, his investment in his work and his training and skill. Numerous facts confirm that Plaintiffs had the ability to control their profits and losses and thus were not employed by DirecTV, as explained in *supra* Section III.B.

First, installing satellite requires specialized training, certification, and skill. *See Herman v. Mid-Atl.*, 164 F. Supp. 2d at 675.

Second, as shown above, Plaintiffs—not DirecTV—owned and controlled the tools and equipment of the job.[20] *Willis*, 2016 WL 4494431, at *7 (no joint employment under federal or California law when putative joint employer did not provide tools or equipment); *Valdez*, 2012 WL 1203726, at *5 (Cox Communications was not joint employer when the "installer or contractor provides the necessary tools and vehicle.").

Third, the method of pay—fixed amounts per job—incentivized Plaintiffs to work efficiently and take on additional jobs to increase their income. UFs 25, 27. *Arnold*, 202 Cal. App. 4th at 589 (no employment relationship when plaintiff was paid a piece rate "based on her results and not the amount of time she spent working"); *Scruggs*, 2011 WL 6026152, at *6 (satellite installers paid by the job "controlled their own profits and losses based upon the amount of work they agreed to accept"). Also, because the Contracting Companies could charge back technicians if the equipment was installed improperly, Plaintiffs could maximize their profits by performing the work well.

Fourth, Plaintiffs controlled their profit because they could perform work for other companies. *Freund*, 185 F. App'x at 783 (installation technician had opportunity for profit because he "could have accepted installation jobs from other companies").

In sum, Plaintiffs' opportunity for profit and loss was determined by their "'skill, initiative, ability to cut costs, and understanding of the [] business,'" confirming DirecTV did not employ them. *Moba v. Total Transp. Svcs., Inc.*, 16 F. Supp. 3d 1257, 1264 (W.D. Wash. 2014) (quoting *Herman v. Exp. Sixty-Minutes*, 161 F.3d at 305).

          c)     Remaining Non-regulatory Factors

The first and eighth factors ask whether Plaintiffs' work was a specialty job and integral to DirecTV's business. These factors arise from *Rutherford Food Corp. v.*

---

[20] Although the installed satellite dishes and boxes are owned by DirecTV, this fact is not significant. *Zampos*, 970 F. Supp. 2d at 805 ("While Comcast provides proprietary equipment to install and service Comcast customer's work orders, it is undisputed that . . . technicians use their own tools . . . to do so"). These dishes and boxes are the means of providing satellite services to consumers, so it would be impractical for the devices to be owned by anyone else. *Moreau*, 356 F.3d at 951 (fact that alleged joint employer owned some equipment did not suggest joint employment when ownership was explained by business rationale).

1  *McComb*, 331 U.S. 722, 730 (1947), which concerned "boning" contracts whereby

2  workers—who performed beef boning on an assembly-line in a warehouse owned by

3  the defendant—were deemed to be employees of a separate entity.  The Ninth Circuit

4  has expressed doubt that these factors apply outside of "production line" or "assembly

5  line" contexts.  *Moreau*, 356 F.3d at 952; *see also Valdez*, 2012 WL 1203726, at *4

6  ("This factor makes the most sense in integrated operations, like work on an assembly

7  line. . . . That is not the case with the cable installations."); *Rios*, 2006 WL 2067847, at

8  *2.  But regardless, these factors are not determinative, especially when there is strong

9  evidence of the absence of an employment relationship under the other factors.  *Moreau*,

10  356 F.3d at 952; *Roslov*, 218 F. Supp. 3d at 974-75; *Bennett*, 2013 WL 4804841, at *1.

11             6.    *Perez v. Lantern Light* is Distinguishable.

12        Plaintiffs rely heavily on one district court decision, *Perez v. Lantern Light Corp.*,

13  2015 WL 3451268 (W.D. Wash. May 29, 2015), finding that DirecTV and a

14  subcontractor, AIS, jointly employed satellite technicians.  But *Perez* is clearly different.

15        First, the *Perez* plaintiffs were *employed* by the subcontractor and were not

16  independent contractors like Plaintiffs.  This distinction is significant because the *Perez*

17  analysis of the joint employment issue was heavily influenced by the fact that AIS

18  employed the plaintiffs.  *Perez*, 2015 WL 3451268, at *15 (noting that work performed

19  by plaintiffs was not like that "'of the typical independent contractor'") (quoting

20  *Rutherford*, 331 U.S. at 730).  The court stressed that, as the subcontractor's employees,

21  the plaintiffs were subject to exclusivity and non-compete agreements and could not

22  work with other satellite companies.  *Perez*, 2015 WL 3451268, at *6 ("Thus, without

23  DirecTV-generated and authorized work orders, an Installer had no work and therefore

24  no pay."); *id*. at *14.  Similarly, the *Perez* court noted as a "significant consideration"

25  that AIS (and thus its employees) had a "near singular reliance on revenue from

26  DirecTV." *Id*. at *5.  In contrast, as independent contractors, Plaintiffs could control

27  their revenue by completing non-DirecTV installation jobs.  For these reasons, the

28

DEFENDANT DIRECTV, LLC'S OPPOSITION/CROSS-MOTION FOR SUMMARY JUDGMENT

absence of an employment relationship between Plaintiffs and the Contracting Companies renders *Perez* inapposite.[21]

Indeed, courts faced with the facts presented here—where subcontractors engaged installation technicians as independent contractors—have consistently held that no joint employment relationship exists.  Those cases (not *Perez*) should guide this Court's inquiry.  *E.g.*, *Gremillion*, 2017 WL 1321318, at *7; *Roslov*, 218 F. Supp. 3d at 977; *Herman v. Mid-Atl.*, 164 F. Supp. 2d at 677; *Santelices*, 147 F. Supp. 2d at 1326-28.

Moreover, even for cases in which technicians were directly employed by the subcontractor, *Perez* is a departure from the prevailing view that installation technicians are not jointly employed by the company whose equipment they install.  As the court noted in *Thornton*, the use of subcontractors by cable or satellite providers "does not appear to be an unusual contract situation," and in all similar cases "the district courts granted summary judgment to the cable provider."  *Thornton*, 2014 WL 4794320, at *10, 14 (citing *Zampos*, *Valdez*, *Lawrence*, and *Jacobson*); see also *Valdez*, 2012 WL 1203726, at *6 ("Although the details are sometimes different, every court to address this issue ultimately has found no joint employment for cable installers at the summary judgment stage under factual circumstances fairly similar to those before this Court.").

## V.   **CONCLUSION**

For the foregoing reasons DirecTV respectfully requests the Court deny Plaintiffs' Motion for Partial Summary Judgment, grant DirecTV's Motion for Summary Judgment, and dismiss Plaintiffs' claims in their entirety.


Dated:  August 9, 2017                    AKIN GUMP STRAUSS HAUER & FELD LLP

By:   _s/ Gregory W. Knopp_
                                          Gregory W. Knopp
                                          Attorneys for Defendant DIRECTV LLC

---

[21] *Perez* also departed from Ninth Circuit case law, especially *Moreau*.  By relying on the fact that DirecTV monitored the contract technicians' work for "performance evaluation" purposes, *Perez* disregarded *Moreau*'s teaching that a company may monitor a subcontractor's workers for quality control without becoming a joint employer.  *Perez*, 2015 WL 3451268, at *8; *Moreau*, 356 F.3d at 950-51.

# APPENDIX A

| Plaintiff | Company | Dates[1] |
|---|---|---|
| Guzik | Empire Communication Services | 2008 to present |
| Kidd | RCC | 2007 to May 2010 |
| | Christian Installation Group | May 2010 to January 2012 |
| Lasater | Christian Installation Group | June 2007 to February 2013; and June 2014 to present |
| Le | Satek Communications | August, September, or October 2009 to mid-June 2012; and July 2012 to August 3, 2012 |
| Lkhagvadorj | Skylink | August 2009 to August 2010 |
| | Satellite Service Pros | September or October 2010 to March 18, 2011 |
| Nault | Precision Technologies | May 2009 to May 2010 |
| | Satellite Services | June 2010 to October 2011 |
| | Empire Communication Services | 2012 |
| Juarez | HD Satellite Services | 2010; and January 2011 to November 2013 |
| Trujeque | AIS | September 2010 to June 2011 |
| | JBS | June 2011 to January 2012 |
| | MDD Communication | February 2012 to August 2012 |
| | Satek Communications | August 2012 to January 2013 |
| | MPJ Satellite | May 2013 to August 2013 |
| Varas | Satellite Services | February 2009 to February 2012 |

---

[1] *See generally* evidence supporting UF 9 regarding the Contracting Companies and timeframes that Plaintiffs claim are relevant to each Plaintiff.  As per its various arguments regarding the applicable limitations periods, DirecTV's position is that this listing is over inclusive as to some Plaintiffs.  Specifically, it is DirecTV's position that RCC, Skylink, and Precision Technologies are not at issue in these cases.